# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Great Lakes Gas Transmission Limited Partnership, | Civil No. 09-CV-3037 (SRN/LIB) |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| Essar Steel Minnesota, LLC; Essar Steel Holdings, Ltd.; Essar Steel Limited; and Essar Global Limited, a/k/a Essar Group, | |
| Defendants. | |

Barbara L. Wohlrabe, Susan D. Nassar, and David W. Elrod, Elrod PLLC, 500 North Akard Suite 3000 Dallas, Texas 75201; David T. Schultz and Julian C. Zebot, Maslon, Edelman, Borman & Brand, LLP, 90 South Seventh Street Suite 3300, Minneapolis, Minnesota, 55402, for Plaintiff

Stephanie J. Goldstein, Fried, Frank, Harris, Shriver & Jacobson, LLP, One New York Plaza, New York, New York 10004; Thomas S. Fraser and Nicole Moen, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402, for Defendants

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Defendant's Motion to Amend the March 19, 2013 Order to Certify for Interlocutory Appeal Under 28 U.S.C. § 1292(b) [Doc. No. 579].

For the reasons that follow, the Court denies the motion.

I.      **BACKGROUND**

The claims in this breach of contract action arise from a September 6, 2006 contract (the "Contract," also referred to by the parties as the Transportation Services Agreement, or "TSA") between Plaintiff Great Lakes Gas Transmission Limited Partnership ("Great Lakes") and Minnesota Steel Industries ("MSI").  (Am. Compl. ¶ 17 [Doc. No. 35]; Contract, Ex. B to First Am. Answer at 1-3 [Doc. No. 80-2].)   Under the general terms of the Contract, Great Lakes agreed to transport up to 55,000 dekatherms of natural gas per day on MSI's behalf, between two specific locations.  (Contract, App. A, Ex. 1 to Aff. of Barbara Wohlrabe [Doc. No. 347-1].)

In 2007, Defendant Essar Steel Minnesota, LLC ("ESML") acquired the membership interests of MSI, and admits that its obligations under the Contract are the same as those originally applicable to MSI.  (First Am. Answer ¶¶ 19, 50 [Doc. No. 314].) In the First Amended Complaint, Plaintiff alleged that ESML was an alter ego or instrumentality of the affiliated foreign entities, Essar Steel Holdings, Ltd., Essar Steel Limited, and Essar Global Limited, a/k/a Essar Group (collectively, the "Foreign Essar Defendants"), such that ESML acted as the agent of the Foreign Essar Defendants in acquiring the assets of MSI.  (Am. Compl. ¶ 47 [Doc. No. 35].)

As consideration for the transportation services, MSI agreed to pay the rates indicated in the Contract, which included the rate schedule reflected in Great Lakes' Federal Energy Regulatory Commission ("FERC") Gas Tariff (the "Tariff").  (Contract ¶ 9, Ex. 1 to Wohlrabe Aff. [Doc. No. 347-1].)  Plaintiff alleges that under the Contract, the

reservation fee for the agreed-upon transportation was to be paid monthly. (Am. Compl. ¶ 20 [Doc. No. 35].) Also pursuant to the Contract, MSI obtained a letter of credit ("Letter of Credit") in the amount of $580,000. (Countercl. ¶ 37 [Doc. No. 80]; Letter of Credit, Ex. C to Countercl. [Doc. No. 80-3].)  Under the terms of the Letter of Credit, if MSI failed to make payments consistent with the Contract, Great Lakes could draw upon the Letter of Credit. (Letter of Credit, Ex. C to Countercl. [Doc. No. 80-3].)

Great Lakes asserts that Defendants failed to make the first payment of $190,190, due on August 17, 2009, and consistently failed and refused to make payments thereafter. (Am. Compl. ¶ 20 [Doc. No. 35].) Due to the 2008 global financial crisis, credit freeze, and consequent decline in steel prices, ESML contends that it was unable to obtain the financing necessary to commence construction of the Nashwauk steel facility.  (Countercl. ¶¶ 52-57 [Doc. No. 314].)  Consequently, ESML asserts that it has no use for the pipeline space reserved under the Contract until the Nashwauk facility is completed. (Id. ¶ 61.)

In this litigation, the parties filed cross motions for summary judgment.  In Defendants' summary judgment motion, Defendants argued that pursuant to the filed rate doctrine and the limitation of liability provision in the Tariff, Great Lakes was prohibited from seeking damages other than as provided in the Tariff. (Defs.' Mem. Supp. Mot. for Summ. J. at 10 [Doc. No. 423].)  Defendants contended that they were entitled to summary judgment because no provisions in the Tariff provided for any recovery – beyond possibly the Letter of Credit, which Great Lakes had already drawn upon. In a related argument, Defendants also contended that the filed rate doctrine precluded Great

Lakes' claim against the Foreign Essar Defendants.  (Id. at 20.)

In its March 19, 2013 Order, this Court denied Defendants' motion.  The Court held that the filed rate doctrine did not preclude Great Lakes from seeking common law contract remedies.  (3/19/13 Order at 15-16 [Doc. No. 559].)  Noting that Great Lakes is not challenging the rates in the Contract or Tariff, nor is it seeking to impose terms not found in Contract or Tariff, the Court found the filed rate doctrine inapplicable.  (Id. at 16.)  In addition, the Court found that Plaintiff had adequately alleged a claim for piercing the corporate veil against the Foreign Essar Defendants and submitted evidence supporting those allegations.  (Id. at 27-28.)  However, recognizing that the parties were engaged in discovery on this derivative liability theory, the Court denied Defendants' summary judgment motion without prejudice as to this claim.  (Id. at 29.)[1]

In its related motion for partial summary judgment, Great Lakes sought judgment on three of Defendants' affirmative defenses.   (Pls.' Mem. Supp. Mot. for Summ. J. at 2 [Doc. No. 418].)  Relevant here is the Court's ruling on the defense of no anticipatory repudiation of the Contract.  In the March 19 Order, the Court granted Plaintiff's motion, finding that any defense claiming that Defendants did not anticipatorily repudiate the

---

[1]  The dispute regarding derivative liability appears to be rendered moot now because the Foreign Essar Defendants have made an offer of judgment concerning this issue.  (Offer of Judgment [Doc. No. 639].)  Pursuant to Fed. R. Civ. P. 68, the Foreign Essar Defendants have agreed to pay all damages determined by the Court to be recoverable by Plaintiff as a result of any judgment entered against ESML for breach and anticipatory repudiation of the Contract, along with all costs incurred to date regarding such claims.  (Id. at 1.)

Contract failed as a matter of law.  (3/19/13 Order at 43-44 [Doc. No. 559].)

In November 2012, Defendant ESML also filed a complaint with FERC regarding

Great Lakes' allegedly unjust and unreasonable practices under § 5 of the Natural Gas Act.

(Defs.' Mem. Supp. Mot. Certify at 5, n.4 [Doc. No. 581].)  FERC made no findings

regarding the merits of the dispute before the Court and dismissed ESML's Complaint on

the grounds that it was "essentially duplicative of the contractual dispute before the federal

district court." (Id.; 142 FERC Order ¶ 21, Ex. 3 to Affidavit of Hayley Ellison [Doc. No.

585-3].)

## II.    DISCUSSION

While courts of appeals have jurisdiction over "all final decisions of the district

courts," 28 U.S.C. § 1291, under certain circumstances, a district court may determine that

an otherwise non-final order is certified for interlocutory appeal under 28 U.S.C. §

1292(b).  See 28 U.S.C.§ 1292(b).   Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves
> a controlling question of law as to which there is substantial ground for
> difference of opinion and that an immediate appeal from the order may
> materially advance the ultimate termination of the litigation, he shall so state
> in writing in such order.

Id.  Thus, the three criteria for certification under this provision are:  (1) the order

involves a controlling question of law; (2) there is substantial ground for difference of

opinion as to that controlling question of law; and (3) certification will materially advance

the ultimate termination of litigation.   White v. Nix, 43 F.3d 374, 377 (8th Cir. 1994)

(citations omitted).

Although the statute grants district courts the discretion to certify orders for interlocutory appeal, "[it] has . . . long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants." Id. at 376.   Due to this additional burden, motions for certification should be "granted sparingly and with discrimination."  Id.  The legislative history of section 1292 indicates that "it was to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation.  It was not intended merely to provide review of difficult rulings in hard cases."  Union Cnty., Iowa v. Piper Jaffray & Co., 525 F.3d 643, 646 (8th Cir. 2008) (quoting United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966)).  The movant must meet a heavy burden of establishing that the case is "an exceptional one in which immediate appeal is warranted."  Nix, 43 F.3d at 376.

Defendants request that the Court amend the March 19 Order to certify the following questions for interlocutory review:

> 1)  Pursuant to the filed rate doctrine, can a transporter (i.e., Great Lakes) seek common-law damages for anticipatory repudiation against a customer (i.e., ESML) for fifteen years of reservation  charges without providing any services when (a) FERC policy limits a transporter's recovery for  a customer's  non-payment  to  a  letter  of credit, (b) Great Lakes' FERC-approved Tariff does not expressly preserve the ability to pursue such claims (contrary to  other transporters' tariffs), but instead contains a limitation of liability provision consistent with FERC policy authorizing such limits, and (c) the Tariff does not contain any acceleration provision?

> 2)  Pursuant to the filed rate doctrine, can a transporter (i.e., Great Lakes)

6

pursue common-law derivative liability claims against third parties (i.e., the Foreign Essar Defendants) when its FERC-approved Tariff contains creditworthiness provisions that explicitly proscribe when and how a transporter (i.e., Great Lakes) can seek security from affiliates of a customer?

(Defs.' Mem. Supp. Mot. Certify at 2-3 [Doc. No. 581].)

### A.    Whether the Order Involves a Controlling Question of Law

This Court has observed that § 1292(b)'s "controlling question of law" criterion refers to legal questions, as opposed to matters within the discretion of the trial court. Pagliolo v. Guidant Corp., No. 06-CV-943 (DWF/SRN), 2007 WL 1567617, at *1 (D.Minn. May 29, 2007) (citing Nix, 42 F.3d at 377)).   In Pagliolo, this Court also cited authority for the proposition that questions regarding the meaning of a statutory or constitutional provision, regulation, or common law doctrine are considered "controlling questions of law" for purposes of § 1292(b). Id. (citing McFarlin v. Conseco Servs., 381 F.3d 1251, 1258 (11th Cir. 2004)).   Here, in support of their position that the issues for which they seek certification involve questions of law, Defendants compare the interpretation of a tariff to the interpretation of a regulation.  (Defs. Mem. Supp. Mot. Certif. at 5 [Doc. No. 581].)   In addition, Defendants cite authority in which district courts have certified orders regarding the applicability of the filed rate doctrine (Defs.' Mem. Supp. Mot. Certif. at 6-7) (citing E. & J. Gallo Winery v. EnCana Corp., 503 F.3d 1027, 1032-33 (9th Cir. 2007); In re Household Goods Movers Antitrust Litig., No. 2:07-cv-764-DCN, 2009 WL 4037036, at *1 (D. S.C. Nov. 20, 2009); In re St. Johnsbury Trucking Co., 191 B.R. 22, 25 (S.D.N.Y. 1996), or accepted the interlocutory review of a bankruptcy

order addressing the filed rate doctrine, In re Total Transp. Inc., 84 B.R. 590, 591-93 (D. Minn. 1988).

The fact that courts have certified orders for interlocutory appeal regarding the applicability of the filed rate doctrine under certain circumstances does not determine the outcome here.  Rather, this Court must determine whether the issues addressed in the March 19 Order involve "questions of law" as contemplated in § 1292(b).

The Eighth Circuit has observed that where there is no issue of fact and the words of the tariff are used in their ordinary meaning with no particular connotation in the expert field, then the interpretation of a tariff ordinarily presents a question of law.  Penn Cent. Co. v. General Mills, Inc., 439 F.2d 1338, 1340 (8th Cir. 1971).  "A tariff is no different from any contract."  Id. (citations omitted).  However, "[a] 'question of law,' as construed in § 1292(b), refers to a purely, abstract legal question."  See Employers Reinsurance Corp. v. Mass. Mut. Life Ins. Co., No. 06-188-CV-W-FJG, 2010 WL 2540097, at *2 (W.D. Mo. June 16, 2010) (citing Ahrenholz v. Bd. of Trustees of Univ. of Ill., 219 F.3d 674, 676-77 (7th Cir. 2000)).

> Challenging the application of settled law to a specific set of facts is not a question of law. McFarlin v. Conseco Services, L.L.C., 381 F.3d 1251, 1258 (11th Cir.2004) (citing Ahrenholz, 219 F.3d at 676). In Ahrenholz, the court stated that "the question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind either."  219 F.3d at 676.

Id.  The Court finds that as in Employers Reinsurance and Ahrenholz, the rulings at issue in the Court's March 19 Order similarly involved "the question of the meaning of a

contract." Id.

Moreover, as Plaintiff argues, Defendants' cited cases concerning interlocutory appeals of the applicability of the filed rate doctrine are inapposite:

> [T]he courts in these cases permitted interlocutory appeal of orders construing the Filed Rate Doctrine only where it was unclear whether the aggrieved party sought damages beyond those permitted by the tariff." See E. & J. Gallo Winery v. Encana Energy Servs., Inc., No. CVF03-5412AWILJO, 2005 WL 2435900, at *23 (E.D. Cal. Sept. 30, 2005) (certifying for determination of whether the challenged rate was actually set by FERC or in the context of a tariff filed with FERC); In re St. Johnsbury Trucking Co., 191 B.R. 22, 30 (S.D.N.Y. 1996) (Sotomayor, J.) (certifying for determination whether the Negotiated Rates Act forbids debtor in bankruptcy from pursuing freight undercharge claims against shippers who paid rates lower than the tariff rate); In re Total Transp., Inc., 84 B.R. 590, 598 (D. Minn. 1988) (MacLaughlin, J.) (certifying for determination whether the Interstate Commerce Act permits the ICC to assess whether collection of the filed rate is reasonable in application).

(Pl.'s Opp'n Mem. at 8 [Doc. No. 584].)

Questions concerning the meaning of the Contract here are not the type of "controlling question[s] of law" warranting certification under § 1292(b). Employers Reinsurance Corp., 2010 WL 2540097, at *2. As noted by FERC in its order dismissing ESML's Complaint, this is a "straight-forward. . . contract dispute over damages resulting from the termination of an agreement." (FERC Order ¶ 21, Ex. 3 to Ellison Aff. [Doc. No. 585-3].) At most, Defendants disagree with the Court's interpretation of the Contract. Such a disagreement is not an exceptional ground warranting immediate appeal. See Nix, 43F.3d at 376.

**B.      Whether There is Substantial Ground for Difference of Opinion**

Defendants also argue that there is substantial ground for difference of opinion, stating that "no controlling or relevant authority supports the Court's conclusion" in the March 19 Order.  (Defs.' Mem. Supp. Mot. Certify at 7 [Doc. No. 7].)   Defendants contend that the specific issue they seek to present to the Eighth Circuit is novel – "whether a claim for common-law repudiation damages is available under a FERC-approved tariff that **both limits liability and does not expressly preserve common-law claims**."  (Id. at 8.)

The Court is not persuaded.  If anything, it is Defendants' argument that the filed rate doctrine precludes claims for common law damages that is novel – not the Court's ruling.   The Court's interpretation of the Contract is consistent with the filed rate doctrine and general principles of contract construction.

> The filed rate doctrine forbids a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority. The filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.

Bd. of Pub. Works, City of Blue Earth, Minn. v. Wisc. Power & Light Co., 613 F. Supp.2d 1122, 1129 (D. Minn. 2009).  Therefore, the filed rate doctrine is only relevant to a breach of contract case where the plaintiff seeks benefits not provided for by the tariff, or at a higher rate.  See American Tel. & Tel. Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 222-23 (1998) (finding state law claims were barred by filed rate doctrine where remedies sought were greater than provided for in tariff).  As noted in the March 19 Order, Great Lakes

10

does not challenge the rates in the Contract or Tariff – it merely seeks to enforce the

Contract as it exists.  (3/19/13 Order at 16 [Doc. No. 559].)  As to the Court's

interpretation of the Contract's limitation of liability provision found in § 6.13.8, the Court

construed that provision in the context of the entire Tariff.  Id. at 21-22; Reardon v. Kelly

Services, Inc., 210 Fed. App'x 456, 459-460 (6th Cir. 2006) (stating, "Numerous

Michigan courts have held that contracts must be read as a whole. A court must consider

the entirety of the contractual text whenever construing any portion of a contract.").

Alternatively, the Court observed that even if the language of the Tariff were ambiguous

and the Court considered parol evidence, Plaintiff's supplemental exhibits would lead the

Court to the same conclusion that liability was not limited to the $580,000 posted in the

Letter of Credit.  (Id. at 22, n.3.)  The Court therefore finds that Defendants have failed to

establish that there is substantial ground for difference of opinion warranting certification

of the March 19 Order.

### C.      Whether Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation

Defendants further argue that certification of the March 19 Order for interlocutory

appeal would materially advance the resolution of the action, because a reversal would

result in the resolution of the litigation or substantially change the litigation.  (Defs.' Mem.

Supp. Mot. Certify at 16 [Doc. No. 581]) (citing Nix, 43 F.3d at 378-79.)  For example,

regarding Plaintiff's derivative liability claims, Defendants contend that the reversal of the

Court's March 19 Order would obviate the need to try these claims at all and would thus

preserve judicial resources.  (Id. at 17.)

This Court has determined that the case will be ready for trial on February 15,

2014, or 30 days after the Court rules on any dispositive motion – whichever date is later.

(Order of 4/1/13 [Doc. No. 560].)  The parties have engaged in extensive discovery and

motion practice.  Because this litigation, filed in October 2009, is in an advanced stage, an

interlocutory appeal would not materially advance the ultimate termination of this

litigation.  Burks v. Abbott Labs., 08-CV-3414 (JRT/JSM), 2013 WL 949890, at *2 (D.

Minn. Mar. 13, 2013) ("[A]lthough a trial date has not been set, the action is ready to be

tried so the potential to save resources by avoiding trial is not as great as it would have

been earlier in the proceedings.")  Moreover, the court has weighed both the benefit and

costs associated with permitting an interlocutory appeal.  Id. (citing SEC v. Credit

Bancorp, Ltd., 103 F. Supp.2d 223, 226 (S.D.N.Y. 2000) ("[T]he benefit to the district

court of avoiding unnecessary trial must be weighed against the inefficiency of having the

Court of Appeals hear multiple appeals in the same case.").

In light of the nature and posture of the case, the Court finds that Defendants have

failed to satisfy all three of the requirements for certification of interlocutory appeal under

§ 1292(b).  This case does not fall within the exceptional and limited circumstances

warranting such certification.  Accordingly, Defendants' motion is denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

Defendant's Motion to Amend the March 19, 2013 Order to Certify for

Interlocutory Appeal Under 28 U.S.C. § 1292(b) [Doc. No. 579] is **DENIED**.

Dated:    August 7, 2013

<div style="margin-left: 45%;">

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge

</div>