UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Great Lakes Gas Transmission Limited Partnership,** | Civil No. 09-CV-3037 (SRN/LIB) |
| Plaintiff, | ORDER |
| v. | |
| **Essar Steel Minnesota, LLC; Essar Steel Holdings, Ltd.; Essar Steel Limited; and Essar Global Limited, a/k/a Essar Group,** | |
| Defendants. | |

_____

David W. Elrod, Barbara L. Wohlrabe, Brian A. Farlow, and Hayley Ellison, Elrod PLLC, 500 North Akard Suite 3000 Dallas, Texas 75201; David T. Schultz and Julian C. Zebot, Maslon, Edelman, Borman & Brand, LLP, 90 South Seventh Street Suite 3300, Minneapolis, Minnesota, 55402, for Plaintiff

Douglas Flaum, Shahzeb Lari, and Kevin P. Broughel, Paul Hastings, LLP, 75 East 55th Street, New York, New York 10022; Lousene M. Hoppe, and Nicole Moen, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402, for Defendants
_____

SUSAN RICHARD NELSON, United States District Court Judge

Before the Court is a March 28, 2014 letter from Plaintiff's counsel in this matter [Doc. No. 756]. Pursuant to Local Rule 7.1(j), Plaintiff requests leave to seek clarification of this Court's March 11, 2014 Memorandum Opinion and Order (the "Order") [Doc. No. 755]. In addition, Plaintiff requests an extension of the deadline to exchange revised expert opinions because Great Lakes seeks to obtain a new expert.

In the Order, this Court found that a risk-adjusted discount rate for future damages was appropriate, but that Defendants' expert – the only expert who proffered a risk-adjusted discount rate – utilized an improper methodology in calculating the discount rate. (Order at 62 [Doc. No. 755].) The Court stated that "the relevant risk to be evaluated is the risk associated with ESML at the time the Contract was entered into" and the parties "should evaluate risk from the perspective of what an investor would have paid to invest in the future stream of income from this Contract at the time it was made." (Id. at 62-63.) In addition, the Court observed that:

> [w]hen ESML purchased MSI – its predecessor to the Contract – ESML assumed the risk of the Contract. In doing so, ESML purchased the obligation to provide a future stream of payments to Great Lakes. Therefore, to the extent that ESML calculated that risk in its decision to purchase MSI, any such calculations would be highly relevant to the evaluation of a proper risk-adjusted rate in this case.

(Id. at 63.) Finding that expert opinion would be helpful to the factfinder, the Court ordered the parties to exchange revised present value calculations, using a risk-adjusted rate, consistent with the Order, within 60 days. (Id.)

Plaintiffs observe that in the March 11 Order, this Court relied on In re Chemtura, 448 B.R. 635, 651 (S.D.N.Y. 2011), a case in which that court stated that "some risk premium is required," but, in that case, Chemtura's "weighted average cost of capital ["WACC"] is much too high a discount rate to capture the risk here." (Pl.'s Letter of 3/28/14 at 1-2) (quoting Chemtura, 448 B.R. at 676.) In addition, Plaintiffs note that the Court also relied on Spectrum Sciences & Software, Inc. v. United States, 98 Fed. Cl. 8, 15-

16 (2011), which found that market value damages are "based on future profits as estimated by potential buyers who form the 'market' and 'reflect the buyer's discount for the fact that the profits would be postponed and . . . uncertain.'"

As to whether there was any evaluation of MSI's risks when ESML purchased MSI's assets, Plaintiffs state that early in the case, ESML took the position that it was unaware of MSI's contractual obligation at the time of evaluation. (Pl.'s Letter of 3/28/13 at 1 [Doc. No. 756].)  Plaintiff indicates that because ESML did not take this into account, in light of the Order's reference to this consideration, Plaintiff is unclear about what risk is to be evaluated. (Foster Aff. ¶ 8 [Doc. No. 756].)  In particular, Plaintiff's expert, Dr. Foster, is not certain whether the relevant risk is "the risk facing the purchaser of the transmission capacity (i.e., the risk that MSI would not want the capacity, or would choose not to use the capacity) or the risk facing the seller of the transmission capacity (i.e., the risk that the purchaser would not pay)." (Id.)  Dr. Foster opines that "economic theory dictates that the average cost of capital would be too high for this particular risk." (Foster Aff. ¶ 9 [Doc. No. 756].)  This opinion, Plaintiff contends, is consistent with the holding of Chemtura. Plaintiffs argue that "application of Spectrum to Great Lakes' damages could result in hypothetical rates much greater than MSI's WACC." (Pl.'s Letter of 3/28/14 at 2 [Doc. No. 756].)

Accordingly, as to the Court's March 11 Order, Plaintiff requests clarification of the following: (1) whether the Court adopted the parameters set forth in Chemtura that the discount rate is not risk-free, but that MSI's WACC at the time the contract was made would

be "much too high a discount rate to capture the risk here"; and (2) whether the Court intended to dictate that the parties use an investor analysis to calculate an appropriate discount rate here, which could result in hypothetical rates exceeding MSI's WACC due to a lack of empirical data.. (Id.)

In response, Defendants object to Plaintiff's request for clarification.  Defendants argue that Great Lakes' request is merely a pretext for arguing against the Court's ruling. (Defs.' Letter of 4/3/14 at 1 [Doc. No. 757].)  As to Plaintiff's claim of a lack of empirical data reflecting the relevant risk, Defendants note that the factual record in the case provides "empirical data that can be used in calculating an appropriate discount rate based on the risk of MSI's non-performance. . . ." (Id. at 2.)  In addition, Defendants contend that the Chemtura opinion does not dictate that the discount rate be derived from the WACC, or any other specific source. (Id.)  Defendants further argue that granting Plaintiff's request for an extension of the scheduling order to allow Plaintiff to obtain a new expert would be prejudicial. (Id.)  Plaintiff filed a reply letter in response to Defendant's objections (Pl.'s Letter of 4/3/14 [Doc. No. 758]) and Defendants filed a sur-reply. (Defs.' Letter of 4/4/14 [Doc. No. 759].)

Because Plaintiff's request is merely a request for clarification of the March 11 Order, the Court grants the request and considers the parties' letter submissions in resolution of the request.  First, the Court generally agrees with Plaintiff's understanding of Chemtura – namely, the Chemtura court noted that the WACC in that case resulted in a discount rate that was too high to capture the applicable risk, leaving it "to the parties to

4

provide expert testimony as to the appropriate rate between those two benchmarks." (Pl.'s Letter of 3/28/14 at 2.)   In addition, the Court in Chemtura observed that "Chemtura's WACC dealt with the company as it had evolved, and incorporated all of the risks that might affect the value of the company," whereas only a "subset of those risks. . . would also affect Witco's ability to perform on the contract."  448 B.R. at 677.   Defendants are correct that this Court – in finding that the appropriate discount rate was a risk-adjusted rate reflecting the same payment risk as the original contract – did not opine on whether that rate "should be determined using a WACC or other analysis, or that the WACC of the breaching party at the time of contracting was 'too high.'"  (Defs.' Letter of 4/3/14 [Doc. No. 757].)   In the March 11 Order, the Court did not prescribe the particular means by which the parties are to calculate an adjusted discount rate.  Neither did the Court mean to circumscribe the various calculations and factors to be considered by parties' experts.   For example, it appears now that ESML did not consider MSI's obligations under the Contract when it purchased MSI, which renders that factor irrelevant.  The Court was unaware of this fact when it noted that consideration of any such risk calculations would be relevant to the evaluation of a proper risk-adjusted rate.  (See Order at 63 [Doc. No. 755].)   The Court recognizes that it is the province of the experts to assist the factfinder in determining the particular rate of discount and the Court will respect any such guidance that the experts provide.  Accordingly, the parties' experts are free to employ whatever measure they find appropriate to reach a fair discount rate that considers risk from the perspective of what an investor would have paid to invest in the future stream of income from this Contract at the time it was made.  (Id. at 62-

63.)

The revised expert report deadline for which Plaintiff seeks an extension was issued by the Court in the March 11 Order.  (Id. at 63.)  As such, Plaintiff's request for an extension is analogous to a request to amend a case management order.  A party moving to modify a case management order must satisfy the showing of good cause required by Federal Rule of Civil Procedure 16(b).  Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).  While the existence of and degree of prejudice to the opposing party are factors to be considered, "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  Id. (citation omitted).

Here, Plaintiff requires a new expert due to Dr. Foster's inability to render an opinion in light of the March 11 Order.  (See Foster Aff. ¶¶ 8-12 [Doc. No. 756].)  Defendants cite the following language in Weisgram v. Marley Co., 528 U.S. 440, 455 (2000), in support of their position that Plaintiff's request for an extension and designation of a new expert should be denied: "It is implausible to suggest, post-Daubert, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail."  The Supreme Court in Weisgram, however, faced a very different issue than the amendment of a pretrial deadline, and its language does not limit this Court's discretion in this regard.[1]   Here, Great Lakes diligently presented this request to the

---

[1] In Weisgram, the Supreme Court held that an appeals court could enter judgment as a matter of law for the verdict loser on appeal, where the verdict winner's evidence was

Court well before the expiration of the 60-period.  Bradford, 249 F.3d at 809.  Moreover, Plaintiff's request was necessitated by Dr. Foster's stated inability to render an opinion upon reviewing the March 11 Order – there is no showing of willfulness or bad faith.  Accordingly, the Court finds that the good cause standard is met.

As noted, in the Order, the Court found that Dr. Foster used an inappropriate risk-free approach to discount future damages and that Defendants' expert, Dr. Blaydon, used an inappropriate methodology.  However, the Court did not preclude both parties from offering expert evidence on discounting damages.  Rather, recognizing the critical importance of expert opinion to the factfinder, the Court offered both parties an equal opportunity to revise their opinions, in light of the Court's ruling.  While Plaintiff now needs a new expert in light of that opinion, there is minimal prejudice to Defendants by extending the deadline to exchange revised expert reports by an additional 45 days.

**THEREFORE, IT IS HEREBY ORDERED THAT**

1. Plaintiff's Letter Request for Clarification of the March 11, 2013 Order [Doc. No. 756] is **GRANTED**, as set forth herein;

2. The parties shall exchange revised present value calculations, using a risk-adjusted rate, consistent with the March 11, 2014 Order, by June 25, 2014.

---

deemed insufficient after the court of appeals found that certain evidence was erroneously admitted.  528 U.S. at 455.

Dated:   April 4, 2014

                                                                                   <u>s/Susan Richard Nelson</u>
                                                                                   SUSAN RICHARD NELSON
                                                                                   United States District Court Judge