# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Great Lakes Gas Transmission Limited Partnership,<br><br>          Plaintiff,<br><br>v.<br><br>Essar Steel Minnesota, LLC; Essar Steel Limited f/k/a Essar Steel Holdings, Ltd.; Essar Steel India Limited f/k/a Essar Steel Limited; and Essar Global Fund Ltd. f/k/a Essar Global Limited,<br><br>          Defendants. | Case No. 09-cv-3037 (SRN/LIB)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Brian A. Farlow, Hayley Ellison, Worthy W. Walker, Barbara L. Wohlrabe, and David W. Elrod, Gruber Hurst Elrod Johansen Hail Shank, LLP, 1445 Ross Ave, Suite 2500, Dallas, TX 75202; David T. Schultz and Julian C. Zebot, Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, for Plaintiff.

Douglas H. Flaum, Kevin P. Broughel, and Shahzeb Lari, Paul Hasting LLP, 75 East 55th Street, New York, NY 10022; Eric A. Hirsch, Fried Frank Harris Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004; Lousene M. Hoppe and Nicole M. Moen, Fredrikson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402-1425, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.     INTRODUCTION

This matter is before the Court on Defendant's Motion to Amend the May 4, 2015 Order to Certify for Interlocutory Appeal [Doc. No. 884].  For the reasons set forth below, the Court denies Defendant's motion.

## II.    BACKGROUND

Although the facts of this matter are thoroughly detailed in prior orders of this Court, the Court finds it prudent to recite the detailed procedural posture of this case, particularly given the unfortunately inaccurate account provided in Defendant's brief. (See Def.'s Mem. at 1–2 [Doc. No. 885].)

Plaintiff Great Lakes Gas Transmission Limited Partnership ("Plaintiff" or "Great Lakes") filed this case in October 2009, alleging that the above named Defendants failed to make all payments due under a contract ("Contract") that was initially executed in 2006 between Plaintiff and Minnesota Steel Industries ("MSI").  (See First Am. Compl. ¶ 20 [Doc. No. 35]; Ellison Aff., Ex. 2 "Contract" [Doc. No. 681-2].)  The Contract, otherwise known as the Transportation Services Agreement ("TSA"), was effective July 1, 2009 through March 31, 2024.  (See First Am. Compl. ¶ 17 [Doc. No. 35.)  The Contract explicitly incorporated the terms of a gas tariff ("Tariff") on file with the Federal Energy Regulatory Commission ("FERC").  (See id.)

In 2007, Defendant ESML purchased MSI, and "expressly and/or impliedly assumed all of [MSI's] liabilities," including MSI's obligations under the Contract at issue in this case.  (See id. ¶ 16; see also First Am. Answer ¶ 19 [Doc. No. 314].)  In its First Amended Complaint, Plaintiff alleged that the Court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeded the value of $75,000 and was between citizens of different states.  (See First Am. Compl. ¶ 9 [Doc. No. 35].)

On September 1, 2011, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 354].  Specifically, Defendants argued that the Court did not have diversity jurisdiction because complete diversity of citizenship did not exist between the parties.  (See Defs.' Rule 12 Mot. to Dismiss Great Lakes' First Am. Compl. For Lack of Subject-Matter Jurisdiction at 2 [Doc. No. 354].)  The parties thoroughly briefed the issue of diversity jurisdiction, but did not address whether the Court had federal question jurisdiction.  The briefing was likely limited to diversity jurisdiction because Plaintiff did not allege federal question jurisdiction in the Complaint.  Before the Court had an opportunity to rule on the jurisdictional issue raised, the parties filed a Stipulation on February 29, 2012, stating "that [Defendants] have no objections to the Court's subject matter jurisdiction in their dispute with Great Lakes, and that [Defendants] will not raise any objections to the Court's subject matter jurisdiction either in this proceeding or in any appellate proceeding related to this proceeding."  (Stipulation ¶ 1 [Doc. No. 392].)  Thus, the Court was under the impression that issues pertaining to subject matter jurisdiction in this case were put to rest.

Accordingly, litigation proceeded and the Court addressed the merits of Great Lakes' claims and Defendants' defenses.  On March 15, 2012, the Court issued an order granting Plaintiff's Motion Dismiss for Failure to State a Claim and to Strike Defendant's Pleadings and dismissing ESML's counterclaims [Doc. No. 397].  On March 19, 2013, the Court issued an Order finding that Defendants were liable for anticipatorily breaching the Contract, as a matter of law [Doc. No. 559].  Great Lakes sought, and still seeks, to "recover damages for [Defendants'] breach of contract based on its Tariff rate, which is

3

the reservation charges due under the TSA."  (See Pl.'s Mem. in Opp'n at 14 [Doc. No. 429].)  Pre-trial, the Court must determine the rate of prejudgment interest that applies to Plaintiff's damages and which FERC Tariff reservation rate applies for calculating the damages.  Thus, the only remaining issues for trial are: (1) the discount rate to apply to future damages; and (2) whether the discount rate to apply to future damages is pre- or post-tax.  Trial was initially scheduled to begin October 27, 2014 [Doc. No. 808].

When this case was on the eve of trial, Defendants alerted the Court via letter [Doc. No. 811] that they believed that the Court in fact lacked diversity jurisdiction. Defense counsel explained that they "first became aware" of the issue when they were preparing their trial brief.  (See Flaum Letter at 1 [Doc. No. 811].)  Specifically, Defendants uncovered that Plaintiff's initial disclosure about the parties' citizenship was incomplete as Great Lakes failed to disclose the citizenship of TC PipeLines, LP's hundreds or thousands of public unitholders.  (See id.)  When Plaintiff initially filed this case, the case law was not as clear as it is today about whether public unitholders' citizenship should be considered when determining whether a court sits in diversity jurisdiction.  The Court assumes that defense counsel's belated awareness about this issue stems from the fact that Defendants changed counsel over the course of this case's multiple year history.

Affording the parties an opportunity to present their positions on the issue of subject matter jurisdiction, the Court permitted Plaintiff to File a Motion for Leave to File a Second Amended Complaint to assert federal question jurisdiction, and permitted Defendant to file a Motion to Dismiss on the issue of subject matter jurisdiction.  The

parties duly filed their respective motions.  The Court carefully studied the parties'

briefing and the relevant case law.  On May 4, 2015, the Court issued an Order [Doc. No.

879] (1) denying Plaintiff's Motion for Leave to File Second Amended Complaint [Doc.

No. 812], and (2) denying Defendant Essar Steel Minnesota LLC's Motion to Dismiss for

Lack of Subject Matter Jurisdiction [Doc. No. 856].  The Court held that resolution of

Plaintiff's breach of contract claim raises a necessarily disputed and substantial federal

question.

The Court then held a telephonic status conference with the parties on May 13,

2015.  During this conference, the Court permitted Defendant to file a motion requesting

an interlocutory appeal on the issue of the Court's subject matter jurisdiction over this

case.  Defendant filed this motion [Doc. No. 884] and a supporting memorandum [Doc.

No. 885] on May 22, 2015.  Plaintiff filed its response brief on June 5, 2015 [Doc. No.

888].

Defendant's supporting memorandum [Doc. No. 885] frankly mischaracterizes

this Court's May 4 Order.  Although the Court spent over fifty pages carefully addressing

and distinguishing relevant case law, Defendant carelessly accuses the Court of not

"cit[ing] any relevant authority for its position."  (See Def.'s Mem. at 3 [Doc. No. 885].)

Unfortunately, in the fog of Defendant's anger about the Court's ruling finding subject

matter jurisdiction (a position Defendant endorsed for years until the eve of trial),

Defendant distorts the record, requiring the Court, once again, to carefully explain its

ruling.

## III.   DISCUSSION

While courts of appeals have jurisdiction over "all final decisions of the district courts," 28 U.S.C. § 1291, under certain circumstances, a district court may determine that an otherwise non-final order should be certified for interlocutory appeal under 28 U.S.C. § 1292(b).  <u>See</u> 28 U.S.C. § 1292(b).   Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

<u>Id.</u>  Thus, the three criteria for certification under this provision are: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion as to that controlling question of law; and (3) certification will materially advance the ultimate termination of litigation.   <u>White v. Nix</u>, 43 F.3d 374, 377 (8th Cir. 1994) (citations omitted).

Although the statute grants district courts the discretion to certify orders for interlocutory appeal, "[it] has . . . long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants."  <u>Id.</u> at 376 (internal quotations and citation omitted).   Due to this additional burden, motions for certification should be "granted sparingly and with discrimination."  <u>Id.</u> (internal quotations and citation omitted).   The legislative history of section 1292 indicates that "it was to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation.  It was not

intended merely to provide review of difficult rulings in hard cases." Union Cnty., Iowa v. Piper Jaffray & Co., 525 F.3d 643, 646 (8th Cir. 2008) (quoting United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966)).  The movant must meet a heavy burden of establishing that the case is "an exceptional one in which immediate appeal is warranted." White, 43 F.3d at 376.

Defendant requests that the Court amend the May 4, 2015 Order ("May 4 Order") to certify the following question for interlocutory review: "whether the Court has federal question jurisdiction over Plaintiff's claims, in particular, Count One?"  (See Def.'s Mem. at 3 [Doc. No. 885].)  ESML also requests that the Court stay this litigation pending resolution of this motion and any appellate proceedings that follow.  (See id.)

### A.  Whether the Order Involves a Controlling Question of Law

A controlling question of law is a legal question and not "a matter of the discretion of the trial court." White, 43 F.3d at 377 (citing Garner v. Wolfinbarger, 430 F.2d 1093, 1096–97 (5th Cir. 1970), cert. denied, 401 U.S. 974 (1971).  "[A] question of law is 'controlling' if reversal of the district court's order would terminate the action." Schwendimann v. Arkwright Advanced Coating, Inc., No. 11-cv-820 (ADM/JSM), 2012 WL 5389674, at *3 (D. Minn. Nov. 2, 2012) (alterations in original) (citing Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990)).

Whether the Court has federal question jurisdiction, and therefore subject matter jurisdiction, is a controlling question of law.  See Schwendimann, 2012 WL 5389674, at *3 (finding that controlling question of law existed where reversal of district court's order would deprive the court of subject matter jurisdiction); Linville v. ConAgra, Inc., No.

7

1:04-CV-00004-WRW, 2004 WL 3167119, at *6 (E.D. Ark. May 19, 2004) aff'd, 186

Fed. App'x 704 (8th Cir. 2006) (same).  Reversal of the Court's finding of federal

question jurisdiction would terminate this action and result in dismissal of Plaintiff's

case.  Accordingly, the first element required for certification of an interlocutory appeal

is satisfied.

**B.  Whether Substantial Ground for Difference of Opinion Exists**

Defendant also argues that a substantial ground for difference of opinion exists in

this case, stating that the Court's Order "cited virtually no authority supporting the

exercise of federal question jurisdiction" and "is contrary to the existing case law,

including controlling Supreme Court and Eighth Circuit precedent."  (See Def.'s Mem. at

6 [Doc. No. 885].)  ESML argues that the Court's jurisdictional finding is

"unprecedented" and string cites several cases which it believes are contrary to the

Court's Order.  (See id. at 7.)  However, only two of those cases are binding on this

Court: (1) Pan American Petroleum Corp. v. Superior Court of Delaware, 366 U.S. 656

(1961), and (2) Central Iowa Power Co-op v. Midwest Independent Transmission System

Operator, Inc., 561 F.3d 904, 913 (8th Cir. 2009).  (See id.)  "At the very least," ESML

argues that the Court's Order represents a "very close issue."  (See id. (citing Hr'g Tr.

64:12–22, Dec. 12, 2014 [Doc. No. 867]).)

The Court disagrees.  First, the Court's Order was exclusively and explicitly based

on Supreme Court and Eighth Circuit precedent.  In fact, the Court expressly

distinguished this case from Pan American and Central Iowa Power Co-Op in its May 4

Order.  (See 5/4/15 Order at 38–39 [Doc. No. 879].)  Although the Court stated during a

8

hearing on December 12, 2014, that whether the Court had federal question jurisdiction was a "very close issue," at that time the parties had not yet submitted comprehensive briefing on the issue, and the Court did not have the benefit of carefully reviewing the parties' position papers or the applicable case law.  Once the Court had the opportunity to review the parties' briefing and carefully study the relevant case law, the Court held that resolution of Plaintiff's breach of contract claim raised a necessarily disputed and substantial federal question.  Thus, the Court's finding of jurisdiction does not "fl[y] in the face" of controlling precedent, but rather explicitly relies on controlling precedent. (Cf. Def.'s Mem. at 7 [Doc. No. 885].)[1]  The Court addresses Defendant's remaining arguments below.

### 1.  The May 4 Order Does Not Violate Well-Pleaded Complaint Rule

Despite the Court's thorough analysis in its May 4 Order, Defendant persists in arguing that the Order violates the well-pleaded complaint rule.  Defendant misconstrues the well-pleaded complaint doctrine and blatantly mischaracterizes the Court's May 4 Order.

---

[1]      In its brief, Defendant continues to cling to its misreading of Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950).  (See Def.'s Mem. at 8 [Doc. No. 885].)  As the Court explained in its May 4 Order, in Skelly Oil, the Supreme Court held that even if the respondent had "sought damages from petitioners or specific performance of their contracts," federal question jurisdiction would not lie, see 339 U.S. at 672, because "the contract underlying the respondent's breach of contract claim was a collateral contract between the respondent-natural gas company and the petitioner-petroleum supply company that did not incorporate a federally filed tariff," (5/4/15 Order at 37 [Doc. No. 879]).  Therefore, "neither seeking damages nor seeking specific performance would alter the fact that the underlying contract did not incorporate a federal tariff and the contract claim did not require the Court to construe any federal provision to determine the merits of the respondent's claim."  (See id.)

Federal question jurisdiction exists if the "well-pleaded complaint" establishes jurisdiction through one of two means, or portals. Williams v. Ragnone, 147 F.3d 700, 702 (8th Cir. 1998) (citing Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983)). The first portal to federal question jurisdiction exists when "federal law creates the cause of action." Id. The second portal exists if the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Franchise Tax Bd., 463 U.S. at 28; see also Louisville & N.R. Co. v. Rice, 247 U.S. 201, 203 (1918) (explaining that "[a] suit arises under an act of Congress when 'it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends'") (internal quotations and citation omitted). To determine whether a case fits within the second portal, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 314 (2005).

Here, the Court held that federal question jurisdiction exists via the second portal, or because Great Lakes' right to relief on its breach of contract claim necessarily depends on resolution of a substantial question of federal law. Below the Court addresses Defendant's concerns about whether the Court's May 4 Order conforms to the well-pleaded complaint rule.

### a. Court's Consideration of the Tariff

First, Defendant argues that the Court's May 4 Order did not identify any facts in the First Amended Complaint supporting federal question jurisdiction. (See Def.'s Mem. at 11 [Doc. No. 885].) Specifically, Defendant takes issue with the fact that the First Amended Complaint does not attach the Tariff that governs the parties' relationship, or reference any Tariff provisions explicitly. (See id.)

While the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss, see Fed. R. Civ. P. 12(d), the Court may consider documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003). "When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003) (internal quotations and citation omitted). Similarly, a court may consider public records on a motion to dismiss. See Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (citing Papasan v. Allain, 478 U.S. 265, 269 n.1 (1986); Stahl v. United States Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003)).

Here, the Tariff was necessarily embraced by the pleadings. Plaintiff explicitly stated in its First Amended Complaint that the Contract between the parties "include[d] the maximum reservation rate for the Contract's transportation path as reflected on Great Lakes FERC Gas Tariff, Second Revised Volume No.1 ('Tariff'), Eighth Revised Sheet No. 4." (See First Am. Compl. ¶ 17 [Doc. No. 35].) Plaintiff also alleged that the Tariff required

Great Lakes to "reserve 55,000 dekatherms of gas transportation capacity in its pipeline . . . to transport natural gas." (See id. ¶ 18.) Because the content of portions of the Tariff are alleged in the operative complaint and Defendants did not question the authenticity of the Tariff, the Court properly considered the Tariff when deciding Defendant's Motion to Dismiss. See Mattes, 323 F.3d at 697 n.4; Kushner, 317 F.3d at 831.

Moreover, the Tariff is a public record, and thus, may also be considered by the Court. As the Court explained in its May 4 Order, federal tariffs, like the one in this case, carry the same legal force as federal regulations, and are thus considered federal law. Central Iowa Power Co-op, 561 F.3d at 913; MCI Telecomms. Corp. v. Garden State Inv. Corp., 981 F.2d 385, 387 (8th Cir. 1992) (explaining that "federal tariffs are the law, not mere contracts"). Federal laws and regulations are clearly matters of "public record." Therefore, the Court properly considered the contents of the operative Tariff when ruling on Defendant's Motion to Dismiss not only because the Tariff was embraced by Plaintiff's First Amended Complaint, but also because it is a public record.

### b. Facial vs. Factual Attack

Defendant also argues that the Court evaluated its challenge to federal question jurisdiction under the wrong standard. Specifically, ESML claims that although its challenge was purely a facial attack on the sufficiency of Plaintiff's First Amended Complaint, the Court improperly evaluated it as a factual attack. (See Def.'s Mem. at 14 [Doc. No. 885].) If the movant presents only a facial attack, the court must confine itself to the pleadings and the nonmoving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). Osborn v. United States, 918

F.2d 724, 729 n.6 (8th Cir. 1990).  Thus the court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008).

It is true that the Court held in its May 4 Order that Defendant presented a factual attack on diversity jurisdiction "because ESML's argument [was] based on jurisdictional facts that were not included in the pleadings, such as the citizenship of one entity that was not adequately disclosed on the face of Plaintiff's First Amended Complaint."  (See 5/4/15 Order at 8 [Doc. No. 879].)

However, the Court clearly analyzed Defendant's attack on the Court's federal question jurisdiction as a "facial attack."  This is evident by the fact that the Court relied on the plain language of the First Amended Complaint when determining whether Count One constituted a state-law claim that raised a substantial and disputed federal question.  (See id. at 28) (citing First Am. Compl. ¶ 48–54 [Doc. No. 35]).  Therefore, Defendant's argument, that the Court analyzed Defendant's attack on the Court's federal question jurisdiction using the improper standard, is meritless.

### c.  Inference of Federal Question Jurisdiction Based on Underlying Facts

Finally, Defendant takes issue with the Court inferring federal question jurisdiction based on the underlying facts alleged in the First Amended Complaint.  (See Def.'s Mem. at 10 [Doc. No. 885].)  Specifically, Defendant appears to argue that because it brought a "facial attack" on the jurisdictional sufficiency of Plaintiff's First

Amended Complaint, it was inappropriate for the Court to look beyond the face of the Complaint and infer subject matter jurisdiction.

ESML's argument evidences a misunderstanding of how the well-pleaded complaint doctrine intersects with federal question jurisdiction based on a substantial and disputed question of federal law. As the Court explained above, pursuant to the well-pleaded complaint doctrine, federal question jurisdiction exists if the plaintiff's right to relief on its state-law claim "necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd., 463 U.S. at 28; see also Rice, 247 U.S. at 203; Peters v. Union Pacific Railroad Co., 80 F.3d 257, 260 (8th Cir. 1996). Thus, a "plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists." Peters, 80 F.3d at 260; see also Farmers Co-op. Elevator of Buffalo Ctr., Iowa v. Abels, 950 F. Supp. 931, 936 (N.D. Iowa 1996). Accordingly, when a defendant brings a "facial attack," the Court looks to the face of the plaintiff's complaint to determine which, if any, state-law claim is alleged. Then, the Court may look *past* the face of the complaint to determine the elements of the state-law claim alleged, and rule whether the state-law claim necessarily depends on resolution of a substantial question of federal law.

Here, Plaintiff alleged a breach of contract claim on the face on its First Amended Complaint. (See First Am. Compl. ¶¶ 48–54 [Doc. No. 35].) Similar to the law in most, if not all, states, under Michigan law, "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in *damages to the party claiming breach.*"

Miller–Davis Co. v. Ahrens Const. Co., 848 N.W.2d 95, 103 (Mich. 2014) (emphasis

added); see also Bd. of Trustees of City of Pontiac Police & Fire Retiree Prefunded Grp.

Health & Ins. Trust v. City of Pontiac, No. 316680, 2015 WL 1214714 (Mich. Ct. App.

Mar. 17, 2015).  Thus, proof that ESML's breach caused Plaintiff's damages was an

essential or "necessary" element of Plaintiff's Count One, Gunn v. Minton, 133 S. Ct.

1059, 1065 (2013), and the Court was required to construe and apply any and all Tariff

provisions that affected whether ESML's actions constituted a breach, and whether any

damages resulted from that breach.  (See 5/4/15 Order at 29–30 [Doc. No. 879].)

Because the Tariff is considered federal law, the Court held, in its May 4 Order, that

Plaintiff's right to relief on its breach of contract claim necessarily depended on

resolution of substantial questions of federal law.  See Grable, 545 U.S. at 314.[2]

---

[2]      Insofar as Defendant takes issue with the Court's citation to three cases ((1)
Mummelthie v. City of Mason City, Ia., 873 F. Supp. 1293, 1305 (N.D. Iowa 1995) aff'd
sub nom., 78 F.3d 589 (8th Cir. 1996); (2) Pioneer Hi-Bred Int'l v. Holden Found. Seeds,
Inc., 35 F.3d 1226, 1242 (8th Cir. 1994); and (3) Jones v. Freeman, 400 F.2d 383, 387
(8th Cir. 1968)) for the proposition that federal question jurisdiction may exist even if a
complaint contains no basis for such jurisdiction, the Court finds that Defendant
mischaracterizes the purpose for which the Court cited the cases.  (Cf. Def.'s Mem. at 11
[Doc. No. 885].)  In fact, the Court cited these three cases in its May 4 Order for the
proposition that federal question jurisdiction may exist "based on the underlying facts
alleged in the First Amended Complaint."  (See 5/4/15 Order at 14 [Doc. No. 879].)
ESML not only mischaracterized the purpose for which the Court cited these cases, but it
also mischaracterized the cases themselves.
        For instance, in Mummelthie, the Iowa district court did not hold that the
plaintiff's failure to cite a jurisdictional statute justified dismissal.  (Cf. Def.'s Mem. at 11
[Doc. No. 885].)  Rather, the Mummelthie Court explained that although generally a
failure to plead jurisdiction provides a basis for dismissal of a complaint, in this case, it
did not.  Mummelthie, 873 F. Supp. at 1304–05.  The basis for the Iowa court's holding
was the Eighth Circuit's admonition to lower courts in Pioneer Hi-Bred.  In Pioneer Hi-
Bred, the Eighth Circuit cautioned that "subject matter jurisdiction should not be used to
dismiss a case containing even a remotely plausible federal claim if the parties and the

### 2. The May 4 Order Does Not Improperly Premise Federal Question Jurisdiction on Defendant's Affirmative Defenses

Defendant also incorrectly argues that the Court's May 4 Order "improperly converted Defendant's affirmative defenses into an element of Plaintiff's claims, and then predicated federal question jurisdiction on th[ose] affirmative defenses." (See Def.'s Mem. at 14 [Doc. No. 885].) According to ESML, "the question of whether Plaintiff's ability to *recover* damages is limited by the terms of the Tariff (or otherwise) is an affirmative defense that has to be asserted and proved by ESML." (See id. at 15) (emphasis original). However, an argument that seeks to limit recoverable damages is not an affirmative defense. See Fed. R. Civ. P. 8(c); Motorola, Inc. v. United States, 729 F.2d 765, 769 (Fed. Cir. 1984) (finding that 35 U.S.C. § 287 constituted a limitation of damages only, not an affirmative defense, when section 287 stated that "no damages shall be recovered."); THI of Texas at Lubbock I, LLC v. Perea, 329 S.W.3d 548, 588 (Tex. Ct. App. 2010) (holding that two state statutes that limited the plaintiff's remedies were not affirmative defenses); Hernandez v. Cnty. of Monterey, No. 5:13-cv-2354-PSG, 2015 WL 1738281, at *1 (N.D. Cal. Apr. 14, 2015); Barnes v. AT & T Pension Ben. Plan–Nonbargained Program, 718 F. Supp. 2d 1167, 1173–74 (N.D. Cal. 2010) (citing Roberge v. Hannah Marine Corp., No. 96–cv–1691, 1997 WL 468330, at *3 (6th Cir. 1997)); see

---

courts have already made [a] vast expenditure of resources." See 35 F.3d at 1242. Accordingly, the Mummelthie Court concluded that it would construe the complaint as "an inartful attempt to assert plausible federal claims." See 873 F. Supp. at 1305.

Thus, the Court cited those cases to support its finding of jurisdiction despite the fact that Great Lakes did not allege federal question jurisdiction in its First Amended Complaint, and also struggled to amend its Complaint properly.

also First Union Nat. Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622 (8th Cir.

1974).

While ESML contends that the Court conflated: (1) "whether Plaintiff has suffered

damages," and (2) "whether, even if Plaintiff has been damaged, it is entitled to collect

damages from ESML" (see Def.'s Mem. at 14 [Doc. No. 885]), the Court views

Defendant's comparison of the two inquiries as a distinction without a difference when

applied to Plaintiff's claim in this case.  It is Plaintiff's burden at trial to establish

recoverable damages under the Tariff.  To determine whether Plaintiff has met its burden

at trial, the Court must interpret various provisions of the Tariff, including the Limitation

of Liability clause.  The parties disagree about the meaning of those clauses and the

measure of recoverable damages under the Tariff.  Defendant's arguments seeking to

interpret these various provisions of the Tariff are just that – they do not constitute an

affirmative defense to liability in this case.

A "party asserting a breach of contract has the burden of proving its damages with

reasonable certainty, and may recover only those damages that are the direct, natural, and

proximate result of the breach."  Alan Custom Homes, Inc. v. Krol, 667 N.W.2d 379, 383

(Mich. Ct. App. 2003); see also Montcalm Fibre Co., Inc. v. Advanced Organics, No.

249642, 2005 WL 957425, at *4 (Mich. Ct. App. Apr. 26, 2005).  Accordingly, for its

breach of contract claim, Great Lakes is required to prove (1) that Defendant's breach

*caused* Plaintiff to suffer damages, and (2) the amount of damages that Plaintiff suffered

directly as a result of Defendant's breach.  When evaluating whether Plaintiff sufficiently

proved its damages with reasonable certainty, the Court would have had to interpret

various provisions of the Tariff, including the Limitation of Liability clause,[3] and

conclude whether this clause limited Plaintiff's recoverable damages.  The meaning of

the Limitation of Liability clause depends on the meaning of the Force Majeure and

Remedies clauses.  (See 3/19/13 Order at 19, 22 [Doc. No. 559].)  Specifically, the Court

previously explained that, given the existence of the Remedies provision of the Tariff

(which limited the Force Majeure clause), the Limitation of Liability provision must only

apply to select tort damages; otherwise, the Remedies provision would be "unnecessary."

(See id.)  In order to interpret the meaning of the Limitations of Liability clause the Court

similarly considered Tariff "provisions concerning monthly payments (Section 5.1.4),

reservation fees (Section 5.1.4.1), payment of the rate on file with FERC (Section

5.1.4.3), imposition of financial penalties for imbalances in quantities (Section 6.3.5), and

accrual of interest on portions of unpaid bills (Section 6.9.4)."  (See 3/19/13 Order at 19

[Doc. No. 559].)  Because the Court was only able to determine the meaning of the

Limitation of Liability provision by reading it in the context of the *entire* Tariff, the

meaning of all of these additional Tariff provisions was instrumental in the Court's

analysis.

---

[3]     The Limitation of Liability provision states:
        Except as otherwise provided herein, neither Transporter nor Shipper shall
        be liable in damages, whether direct, indirect, consequential or otherwise,
        other than for acts of gross negligence, undue discrimination or willful
        misconduct and then only to the extent that Force Majeure does not apply,
        provided that nothing herein shall limit Transporter's or Shipper's liability,
        if any, for direct damages resulting from its own negligence.
(Tariff § 6.13.8 [Doc. No. 425-5].)

The Court also notes that as part of analyzing the sufficiency of Plaintiff's affirmative case it also previously needed to determine whether the creditworthiness standards limited Plaintiff's case for damages.  (See 3/19/13 Order at 23–24 [Doc. No. 559].)  Early in this case, Defendants sought to invoke the creditworthiness standard, "which required MSI to post three months' estimated charges as collateral," in order to limit Plaintiff's case for damages.  (See id. at 23.)  Specifically, Defendants argued that the creditworthiness clause entitled Great Lakes only to three months of charges and "nothing more" if Defendants breached.  (See id.)  Defendants' efforts to so limit Plaintiff's remedy did not constitute the assertion of an affirmative defense.  Distilled to its essence, the Court cannot assess whether Great Lakes has proven all the elements of its claim without considering the meaning of these Tariff provisions for Plaintiff's affirmative case.

Additionally, the Court notes that the parties appear to dispute which Tariff reservation rate provision applies for determining Plaintiff's damages.  Great Lakes must establish "with reasonable certainty" the amount of damages it suffered as part of its prima facie case.  See Krol, 667 N.W.2d at 383.  Plaintiff emphasizes to the Court that the reservation rate has changed since the parties initially entered into this contract, and the parties seem to dispute which Tariff maximum reservation rate applies.  Insofar as the Court must resolve the dispute of which Tariff reservation rate applies in order to determine the precise amount of damages Plaintiff suffered, the Court finds that the dispute over which FERC Tariff rate controls serves as a supplemental basis for federal question jurisdiction in this case.

Defendant claims that this case is analogous to MacManus v. Chattanooga-Hamilton County Hospital Authority, No. 1:08-CV-96, 2008 WL 2115733 (E.D. Tenn. May 19, 2008), a case in which a Tennessee district court held that no federal question jurisdiction existed because resolution of a federal question was not necessary.  However, the Court finds MacManus clearly distinguishable.  In MacManus, the plaintiff-physician filed suit against a governmental subdivision that owned a hospital for suspending the plaintiff's medical staff privileges, pursuant to a professional review action.  See, 2008 WL 2115733, at *1.  The plaintiff alleged several state-law claims, including breach of contract.  See id.  The defendant had initially removed the case to federal court because it contended that the plaintiff's claims required the "resolution of a substantial question of federal law (i.e., whether a proper 'professional review action' was conducted by Defendant pursuant to the [Health Care Quality Improvement Act of 1986 ('HCQIA')])." See id. at *2.  Thus, the Tennessee district court analyzed whether the plaintiff's state-law claims necessarily raised substantial and disputed issues of federal law.  See id. at *4.

Under Tennessee law, like Michigan law, to prove breach of contract, the plaintiff needed to establish (1) the existence of an enforceable contract, (2) the defendant breached the contract, and (3) damages were caused by the defendant's breach.  See id. The MacManus Court explained that because the plaintiff could "prove his breach of contract claim by simply showing that [the] [d]efendant did not comply with the procedures outlined in the Bylaws [that were contained in the private contract between the parties], which would not require any analysis of, or reference to, the HCQIA, it [wa]s irrelevant that [the] [p]laintiff might also be able to establish a breach by showing

20

that [the] [d]efendant violated the HCQIA." See id. at *4.  Additionally, the MacManus

Court held that because the plaintiff could prove that the defendant breached the contract

without implicating the federal law, then the federal law was also immaterial for the

plaintiff to establish its prima facie case for damages.  See id. at *5.  Although the

plaintiff was required to establish that he suffered damages as a result of the defendant's

conduct, he could prove both that the defendant breached the contract *and* that he

suffered damages from the defendant's breach without reference to the federal law.  See

id.  Therefore, the Tennessee district court held that although the HCQIA contained a

presumption against damages, the plaintiff did not have to address that presumption in his

prima facie case because the presumption was a merely an affirmative defense to the

state-law claims.  See id.

　　　In contrast, here, Great Lakes' state-law breach of contract claim cannot be

resolved without analysis of provisions in the controlling Tariff.  To determine whether a

breach occurred, and Plaintiff subsequently incurred damages from that breach, the Court

had to interpret and apply Tariff provisions.  Unlike the plaintiff in MacManus, here,

Great Lakes' breach of contract claim unavoidably implicates the Tariff, because the

relevant terms are contained within the Tariff, not within a private contract.  Therefore,

Plaintiff's claim *necessarily* raises a disputed federal issue, and determining whether

Plaintiff suffered damages "as a result of Defendant's conduct" depends on the Court's

interpretation of provisions in the Tariff.  See id.

### 3. Interpretation of the Tariff Provisions Raises Substantial Questions of Federal Law

#### a. Substantiality of Federal Issues

Defendant also argues that even assuming the Court must interpret certain Tariff provisions, the interpretation required is not "substantial" enough to justify federal question jurisdiction.  (See Def.'s Mem. at 19 [Doc. No. 885].)  In order to qualify as substantial, a federal issue must be important "to the federal system as a whole . . . it is not enough that the federal issue be significant to the particular parties in the immediate suit."  Gunn, 133 S. Ct. at 1066.

The Court already made clear in its May 4 Order that resolution of the actually disputed federal issues in this case – the interpretation and application of the Tariff provisions – is significant to the federal system as a whole.  (See 5/4/15 Order at 40 [Doc. No. 879].)  ESML argues that under the Court's view, "*any* case involving a federal tariff would automatically give rise to federal question jurisdiction."  (See Def.'s Mem. at 20 [Doc. No. 885].)  The Court disagrees.  In order for federal question jurisdiction to lie, a case would, by necessity, require a court to resolve a substantial and disputed federal issue.  If federal tariff provisions were immaterial, or relatively insignificant, to the court's ruling on the merits of the plaintiff's claims, or if the parties did not dispute the meaning or application of the relevant tariff provisions, then a substantial and disputed federal question would not exist, and federal question jurisdiction would not lie.

Defendant's efforts to analogize this case to Pritika v. Moore, _ F. Supp. 3d _, No. 13 CIV. 8369 PGG, 2015 WL 1190157 (S.D.N.Y. Mar. 16, 2015), are also unavailing.  In

Pritika, a derivative shareholder brought suit against a group of defendants for allegedly

breaching their fiduciary duties by causing or permitting Avon, a manufacturer and

distributer of personal care products, to violate the Foreign Corrupt Practices Act

("FCPA").  See 2015 WL 1190157, at *1.  "Although Avon's compliance with the FCPA

[was] one of the critical issues in this litigation," the New York district court held that the

"case [did] not implicate the validity of the FCPA or the requirements that the Act

impose[d]."  Id. at *5.  In other words, the parties did not dispute the meaning of the

relevant FCPA provisions.  Instead, the case only required the court to apply a federal

legal standard to private litigants' state law claims.  See id.  (explaining that the FCPA

only prescribes a reasonableness standard for assessing the adequacy of issuers'

practices).  The Pritika Court explicitly contrasted this case from others that involved the

application of a "complex federal regulatory scheme," or "the web of rate-making laws

and regulations applicable to cable television providers."  See id. (citing Broder v.

Cablevision Sys. Corp., 418 F.3d 187, 191–95 (2d Cir. 2005)).

Unlike Pritika, where "[t]he critical issues in th[e] case [were] primarily factual,"

2015 WL 1190157, at *5, the critical issues in this case required the Court to interpret the

meaning of several Tariff provisions and apply those provisions to the facts of the case.

Although a factual inquiry was necessary, that, by itself, does not negate the fact that the

Court also had to determine the meaning of the Tariff provisions as a matter of law.

Thus, the parties' dispute in this case is similar to the dispute in Broder, which involved

"aspects of [a] complex federal regulatory scheme . . . as to which there [was] 'a serious

federal interest in claiming the advantages thought to be inherent in a federal forum.'"

See Broder, 418 F.3d at 195 (quoting Grable, 545 U.S. at 313).  As Plaintiff explains, the question of "whether a [FERC regulated] transporter can seek full contract damages from a [FERC regulated] breaching shipper" is a question that "will impact transporters' future suits against breaching shippers."  (See Pl.'s Mem. at 20 [Doc. No. 888].)  The federal government's substantial interest in ensuring consistency and fairness in a federal regulatory scheme is akin to the federal government's interest in collecting taxes, in that both are "express[] federal function[s]."  See MacManus, 2008 WL 2115733, at *8 (citing Grable, 545 U.S. at 315).

Moreover, the Court notes that its ruling will not open the floodgates to federal court litigation.  The Court agrees with Grable – a court must ensure that the "congressionally approved balance of federal and state judicial responsibilities" is not violated.  Grable 545 U.S. at 314.  Finding federal question jurisdiction in this case, however, does not fail to consider such a balance of responsibilities.  The best evidence for this is section 717u of the Natural Gas Act ("NGA"), which provides federal courts with "exclusive jurisdiction" over cases involving violations of regulations promulgated pursuant to the NGA.  See 15 U.S.C. § 717u.  This provision demonstrates that Congress affirmatively sought to provide a federal forum for cases, such as the one currently before the Court, that involve a substantial and disputed question about NGA regulations – such as the meaning of provisions in a FERC tariff.  While Defendant correctly notes that "the interest in uniformity in construction of federal *contractual* provisions is not enough to pose federal question issues," Virgin Islands Hous. Auth. v. Coastal Gen. Const. Servs. Corp., 27 F.3d 911, 916 (3d Cir. 1994) (emphasis added), here, the parties dispute the

24

meaning of federal *law*, as opposed to the construction of mere contractual terms that bind a private party and a federal entity.

### b. Distinguishing Non-Controlling Case Law

Defendant attempts to analogize this case to <u>Pacific Gas & Electric Co. v. Arizona Electrical Power Cooperative, Inc.</u>, 479 F. Supp. 2d 1113 (E.D. Cal. 2007) (hereinafter, "<u>PG&E</u>"), and <u>NOCO Inc. v. Rochester Gas & Electric Corp.</u>, No. 13-CV-6487L, 2015 WL 1097406 (W.D.N.Y. Mar. 11, 2015), but the Court finds that these cases are distinguishable.

In <u>PG&E</u>, energy purchasers brought suit against non-public utilities, seeking damages and declaratory relief for sums allegedly owed as a result of overpayment for energy.  <u>See</u> 479 F. Supp. 2d at 1116–19.  Specifically, the plaintiffs alleged that they had paid defendants amounts that were higher than the FERC-approved rates, which were outlined in the relevant FERC tariffs.  <u>See id.</u>  The federal law at issue in the case was the Federal Power Act ("FPA") and the federal tariffs promulgated thereunder.  <u>Id.</u> at 1123.  Similar to tariffs promulgated under the NGA, tariffs promulgated under the FPA are considered law.  Thus, the court needed to determine whether the plaintiffs' state-law claim was sufficiently based on a substantial and disputed question of federal law, since the private contract between the parties referenced the FERC tariff.  <u>See id.</u> at 1121 (explaining that "the question before this [c]ourt is whether the incorporation by reference of federal regulations into a purely state law contract is sufficient to confer subject matter jurisdiction.").  The court held that federal question jurisdiction was absent because resolution of the plaintiffs' claims did not require interpretation of the federal

tariff.  See id. at 1125.  Rather, it was only the parties' private contract language that would "inform the resolution of this matter."  See id.  In contrast, here, the resolution of Plaintiff's breach of contract claims requires the Court to interpret substantial and disputed provisions of the Tariff, such as the Remedies and Limitation of Liabilities provisions.  Therefore, it is not only the parties' private contract language that informs resolution of Plaintiff's case.

The PG&E Court also noted that Congress had indicated and the Ninth Circuit had affirmed that the defendants, non-public utilities, were not subject to FERC authority or to the regulations of the FPA.  See id. at 1126.  The Ninth Circuit had recently held in Bonneville Power Administration v. FERC, 422 F.3d 908 (9th Cir. 2005), that non-public utilities were exempt from the reaches of the refund authority granted to FERC under the FPA.  Accordingly, the PG&E Court determined that by exempting defendants from the governance of FERC it was clear that "Congress intended to limit the scope of jurisdiction vis-à-vis these [d]efendants in precisely this type of claim."  See id. at 1123.  Therefore, the court held that it also lacked federal question jurisdiction because there was no federal authority for the plaintiffs to enforce these tariffs against these particular defendants.  The court explained that although the FPA contains an exclusive jurisdiction provision that provides that federal district court shall have jurisdiction over violations of the FPA and suits to enforce rules promulgated under the FPA, because these defendants were not subject to the FPA, they could "only be bound to comply with the language of the tariffs purely as a matter of contract law."  See id. at 1126.

Here, however, Great Lakes and ESML are subject to the FERC's authority, the NGA, and the tariffs and rules promulgated thereunder.  Congress has not indicated and the Eighth Circuit has not ruled that Defendants are not regulated by FERC, pursuant to the NGA.  Therefore, unlike the FPA's exclusive jurisdiction provision, which did not apply to the defendants in PG&E, in this case, the exclusive jurisdiction provision in the NGA, which applies to ESML, supports the Court's determination that it has federal question jurisdiction.

This case is similarly distinguishable from NOCO, 2015 WL 1097406.  In NOCO, an energy service company brought several state-law claims against a utilities company, seeking reimbursement for alleged overpayment on energy.  See 2015 WL 1097406, at *1–3.  The parties' contractual relationship was governed by a private contract that referenced a federally filed tariff.  See id. at *5.  Although the tariff contained a provision that obligated the defendant to accurately report capacity, a provision which the defendant allegedly breached by overcharging the plaintiff, the NOCO Court held that simply because "the tariff [wa]s *relevant* to [the plaintiff's] claims" was insufficient to establish federal question jurisdiction.  See id. at *7 (emphasis original).  The defendant did not appear to dispute the interpretation of the tariff's reporting requirement, nor did it dispute the plaintiff's allegation that it had inaccurately reported its capacity in violation of the relevant tariff provision.  See id. at *2, *7.  Therefore, in NOCO, the plaintiff's claims did not require resolution of a disputed and substantial federal question.

In contrast, here, Plaintiff's state-law claims required the Court to interpret several Tariff provisions, the meaning of which the parties disputed.  Additionally, ESML's

obligation to make payment and Great Lakes' right to recover unpaid Tariff rates are expressly set forth in the Tariff. Moreover, the parties appear to dispute which FERC Tariff rate applies for the purposes of calculating Plaintiff's damages. Thus, resolution of Great Lakes' claims required resolution of substantial and disputed federal questions. Accordingly, while the plaintiff's claim in <u>NOCO</u> merely "*relate[d] to a federally filed tariff,*" Great Lakes' breach of contract claim "is genuinely *based* on such a tariff." <u>See</u> <u>id.</u> at *7 (emphasis original).

### c.  Distinguishing FERC's Primary Jurisdiction from the Court's Subject Matter Jurisdiction

Finally, the Court notes that ESML continues to confuse FERC's primary jurisdiction with the Court's subject matter jurisdiction. (<u>See</u> Def.'s Mem. at 22–23 [Doc. No. 885].) FERC is given primary jurisdiction over disputes requiring its unique expertise or suits regarding the reasonableness of FERC-approved rates, pursuant to the "filed rate doctrine." (<u>See</u> 3/19/13 Order at 14 [Doc. No. 559].) Because the complaint ESML filed to the Commission did not pertain to whether the rate between the parties was "just and reasonable," FERC correctly declined to hear the case. (<u>See</u> <u>id.</u> at 14–16.)

The Commission determined that (1) it had no special expertise in "straight-forward contractual matters;" (2) there was no need for "uniformity of interpretation when dealing with a contract dispute over damages resulting from the termination of an agreement;" and (3) the issue of anticipatory repudiation of the TSA was not important in relation to the Commission's regulatory responsibilities. (<u>See</u> Moen Decl., Ex. 4 "FERC Order Dismissing ESML's Complaint" at 6 [Doc. No. 859-1].)

"FERC possesses expertise with respect only to technical matters, not with respect to the correct application of the same contract interpretation principles that courts use to fathom the parties' intent."  See Pennzoil Co. v. FERC, 645 F.2d 360, 385 (5th Cir. 1981).  Therefore, simply because FERC determined that Plaintiff's claims did not require its specialized expertise does not mean that determining whether Plaintiff is entitled damages is an issue that does not require the Court to interpret relevant Tariff provisions.

In sum, the Court finds that the second element required for certification is not satisfied – a substantial ground for difference of opinion about the Court's jurisdictional finding does not exist. [4]

### C.  Whether Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation

Defendants further contend that certification of the May 4 Order for interlocutory appeal would materially advance the resolution of this case, because a reversal would

---

[4]      Moreover, the Court notes that substantial ground for difference of opinion about the Court's jurisdiction is even more unlikely given the Eighth Circuit's holding in MCI Telecomms. Corp., 981 F.2d 385, 387 (8th Cir. 1992).  In MCI, a telecommunications provider sued the defendant to recover unpaid service charges of amounts specified in a Federal Communications Commission ("FCC") tariff.  See 981 F.2d at 386.  The Eighth Circuit held that that the lawsuit arose under federal law because "the carrier's claim for payment [was] necessarily based on the filed tariff."  See id. at 387.  Although the Eighth Circuit did not elaborate on whether the plaintiff's claim was entitled to federal question jurisdiction because it was impliedly created by federal law, portal one, or necessarily relied on the resolution of a disputed federal question, portal two, the court affirmatively determined that federal question jurisdiction existed.  Therefore, although the precise basis for the court's holding remains unclear, the fact that the plaintiff's claim in MCI sufficiently "arose under" federal law weighs in favor of the Court finding that Great Lakes' claim in this case also sufficiently arises under federal law.  Defendant's motion fails to address MCI and how this controlling opinion can be reconciled with ESML's position.

result in a conclusion to the litigation or would substantially change the litigation.  (Def.'s

Mem. at 24 [Doc. No. 885].)  Below, the Court addresses Defendant's specific arguments

that pertain to this third and final factor in the Court's certification analysis.

### 1.  Serious Questions about Subject Matter Jurisdiction Do Not Exist

Defendant claims that "where, as here, there is a serious question regarding the

existence of jurisdiction, the avoidance of a potentially unnecessary, improper and

duplicative trial heavily favors interlocutory appeal."  (See Def.'s Mem. at 25 [Doc. No.

885].)  According to ESML, Union County, Iowa v. Piper Jaffray & Co., 525 F.3d 643,

647 (8th Cir. 2008) stands for the proposition that "[a] substantial ground for a difference

of opinion exists when there are 'a sufficient number of conflicting and contradictory

opinions' or when there is a 'dearth of cases' on a particular issue."  (See id. at 6.)

However, as Plaintiff aptly notes, Defendant misconstrues the Eighth Circuit's

opinion in Union County.  In Union County, the Eighth Circuit stated that "[w]hile

identification of 'a sufficient number of conflicting and contradictory opinions' would

provide substantial ground for disagreement . . . 'a dearth of cases' does not constitute

'substantial ground for difference of opinion.'"  Union County, Ia., 525 F.3d at 647

(quoting White, 43 F.3d at 378) (emphasis added); accord Emp'rs Reinsurance Corp. v.

Mass. Mut. Life Ins. Co., No. 06-CV-0188, 2010 WL 2540097, at *3 (W.D. Mo. June 16,

2010) (holding that a "void of authority" does not demonstrate "substantial" ground for

difference of opinion where the court properly referred to relevant precedent and

analogous decisions to reach its conclusion).

Here, Defendant does not point to any, much less a "sufficient number" of, conflicting or contradictory opinions.  Rather, the Court has painstakingly distinguished the countless non-controlling cases that Defendant has referenced, which involve non-regulated entities, or state-law claims that do not raise substantial or necessary issues of federal law, or claims that are based on collateral contracts as opposed to contracts incorporating federal tariffs.  Accordingly, the Court finds that Defendant did not demonstrate that substantial questions exist regarding the Court's jurisdiction.

## 2.  Recent Scheduling of Trial

The Eighth Circuit explains that a court should grant an interlocutory appeal "only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation."  White, 43 F.3d at 376 (internal quotations and citations omitted). Accordingly, ESML argues that the Court should grant its motion because a reversal of the Court's jurisdictional finding would avoid an "unnecessary trial" in this case.  (See Def.'s Mem. at 26 [Doc. No. 885].)  Defendant notes that the Court only recently set the trial date after ESML notified the Court of its intention to move to certify for interlocutory appeal.  Therefore, ESML argues that it would be unfair to impose the burden of trial on ESML if a higher court ultimately determines that no subject matter jurisdiction exists in this case.  (See id.)  Plaintiff vehemently disagrees, and instead claims that the parties' two day trial on the appropriate discount rate to apply to Plaintiff's damages should not be delayed any further.  (See Pl.'s Mem. at 13 [Doc. No. 888].)

"The Court may find that certification of an interlocutory appeal would be appropriate if there would be a great amount of time and expense required to proceed with litigation in comparison with the time and expense of staying the proceedings and pursuing an immediate appeal." Fenton v. Farmers Ins. Exch., No. 07-cv-4864 (JRT/FLN), 2010 WL 1006523, at *2 (D. Minn. Mar. 16, 2010) (citing Saunders v. Ace Mortgage Funding, Inc., No. 05-cv-1437 (DWF/SRN), 2007 WL 2008677, at *3 (D. Minn. July 6, 2007)).  In Fenton, this Court concluded that the delay that the defendant would face from the court's denial of its motion for a certification of appeal would be minimal, "because the only remaining issue for trial [was] damages, and the parties [had] only six more depositions to conduct before they [would] be ready for trial." See Fenton, 2010 WL 1006523, at *2.  Similarly, in Burks v. Abbott Laboratories, this Court held that "although a trial date ha[d] not been set, the action [was] ready to be tried so the potential to save resources by avoiding trial [was] not as great as it would have been earlier in the proceedings."  No. 08-cv-3414 (JRT/JSM), 2013 WL 949890, at *2 (D. Minn. Mar. 11, 2013); see also Anderson v. Dairy Farmers of Am., Inc., No. 08-cv-4726 (JRT/FLN), 2010 WL 4318710, at * 2 (D. Minn. Oct. 27, 2010) (explaining that "an interlocutory appeal would not materially advance the ultimate termination of this litigation," since "[d]iscovery ha[d] ended and this case ha[d] been placed on the Court's civil trial calendar with the expectation of a five day trial.").  "If trial of the case can be had in a few days, the possibility of saving relatively small amounts of trial-court time is not thought sufficient to justify immediate appeal." 16 Charles Alan Wright et al., Federal Practice and Procedure § 3930 (3d ed. 2015).

32

Here, the parties have litigated this case for approximately six years.  The parties have briefed, and re-briefed countless issues.  Years ago, the Court held that Defendants were liable for breaching the contract, and the Court granted summary judgment as in favor of Plaintiff.  The only remaining issue for trial is quite limited – the appropriate discount rate to apply to Plaintiff's future damages.  A two-day trial was scheduled to take place on October 27, 2014 [Doc. No. 808].  The parties had filed Daubert motions, and the Court had struck Defendant's proffered expert witness from testifying.  (See generally 10/10/14 Order [Doc. No. 840].)  The parties had submitted their trial briefs, witness lists, proposed voir dire and special verdict forms, and additional motions in limine [Docs. No. 824–39, 841–43].  It was during this final trial preparation that defense counsel identified a new concern about the Court's subject matter jurisdiction.  Accordingly, the Court postponed the October 2014 trial indefinitely in order to address the question of subject matter jurisdiction.

After carefully reviewing the briefing and case law, the Court held that it had federal question jurisdiction.  Immediately after this ruling, the Court held a telephonic conference and re-scheduled the two-day trial for August 27, 2015.  Therefore, the action is ready to be tried and the "potential to save resources" at this exceedingly late stage in litigation is "not as great as it would have been earlier in the proceedings."  See Burks, 2013 WL 949890, at *2.  Additionally, because the only issue left for the jury to resolve is the appropriate discount rate to apply to Plaintiff's future damages, the delay from a denial of interlocutory appeal is minimal for ESML.  See Fenton, 2010 WL 1006523, at *2.

33

Moreover, the Court notes that it is immaterial that the Court re-set the trial date right *after* Defendant notified the Court of its intent to file a motion for interlocutory appeal.  Even if the Court had not re-set the trial date, "the parties would be no further from a final disposition, since all discovery is completed and the Court has narrowed the case to a single jury issue."  (See Pl.'s Mem. at 14 [Doc. No. 888]); Burks, 2013 WL 949890, at *2 (explaining that although a trial date was not yet set, the action was ready for trial).

This is in stark contrast to the cases cited by ESML, in which contradictory opinions on the dispositive issue existed in the Circuit, or in which the dispositive question was certified at the very outset of litigation or before discovery or very complex and lengthy trials were conducted.  Cf. Hawaii ex rel. Louie v. JP Morgan Chase & Co., 921 F. Supp. 2d 1059, 1068 (D. Haw. Jan. 20, 2013) (certifying order denying attorney general's motion for remand in six separate but nearly identical actions for consumer fraud largely because resolution of the issue affected not just one, but multiple cases, and the cases had not yet advanced to summary judgment); EEOC v. Allstate Ins. Co., 4:04-CV-03159, 2007 WL 38675, at *4–5 (E.D. Mo. Jan. 4, 2007) (certifying denial of partial summary judgment where (1) decision on appeal could either obviate need for trials for each of one hundred claimants or "encourage the parties to settle after the trial of only a few claimants, rather than continuing with the trial of all claimants in order to preserve the appealability of the questions at issue in this order," and (2) there was "a substantial ground for difference of opinion on the questions decided" by the Court); AT&T Commc'ns of Midwest, Inc. v. Qwest Corp., No. 06-cv-3786 (MJD), 2007 WL 1994047,

at *1 (D. Minn. July 3, 2007) (certifying denial of motion to dismiss based on statute of limitations filed in lieu of answer because "there [were] contradictory opinions on th[e dispositive] issue in this Circuit"); Saunders, 2007 WL 2008677, at *2–3 (certifying denial of partial motion for summary judgment because (1) "there [was] substantial ground for difference of opinion on th[e] issue" of whether defendants were exempted from the FLSA requirements, and (2) if the Eighth Circuit held defendants were exempt from some claims, "the parties would not have to address the hours worked by hundreds of current or potential claimants, thereby reducing discovery and trial expenses" in an "ensuing complex and lengthy trial"); Klein v. Vision Lab Telecommc'ns, Inc., 399 F. Supp. 2d 528, 537 (S.D.N.Y. 2005) (certifying order denying plaintiffs' motion for remand before the case had advanced to summary judgment because the potential risk to plaintiffs of having to re-try claims in state court "violates the spirit of the TCPA"); In re Brand Name Prescription Drugs Antitrust Litig., No. 94-CV-897, 1996 WL 732834, at *2 (N.D. Ill. Dec. 18, 1996) (certifying order denying class plaintiffs' motion for remand for lack of subject matter jurisdiction in MDL antitrust litigation where (1) there was "substantial grounds for difference of opinion" about the court's federal question jurisdiction, and (2) the case had not yet advanced to summary judgment).

Defendant correctly notes that if the Court permits this case to go to trial and the Court's jurisdictional finding is ultimately reversed, then the parties may be forced to try this discrete issue twice, "once in federal court and again in state court."  See Klein, 399 F. Supp. 2d at 537 (granting interlocutory appeal because "[p]roceeding with the case where the possibility exists that this Court lacks jurisdiction could force plaintiffs to try

this case twice, once in federal court and again in state court."). However, because Defendant failed to present a sufficient number of conflicting and contradictory opinions that would provide substantial ground for disagreement with the Court's jurisdictional finding, the likelihood that the parties are forced to try the case twice is minimal. Moreover, because the parties have completed discovery, exhausted all issues on summary judgment, and have even already prepared trial briefs for the case, the Court finds that this case does not present an "exceptional case[] where a decision on appeal may avoid protracted and expensive litigation." See White, 43 F.3d at 376.

Finally, the Court notes that it has also considered the costs associated with allowing an interlocutory appeal as well as the savings. See S.E.C. v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) (explaining that "the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case."); Burks, 2013 WL 949890, at *2. Given the fact that Defendant is likely to appeal all, if not most, of this Court's rulings following trial, allowing an interlocutory appeal at this stage will likely not prevent the inefficiency of having the Eighth Circuit hear multiple appeals in the same case.

### 3.  Complex Issues about Choice of Law

ESML also contends that "inconsistencies between the May 4 Order and prior proceedings and rulings in this case have created a tangle of procedural and substantive issues that have to be resolved before a trial can be held." (See Def.'s Mem. at 27–28 [Doc. No. 885].) The Court addresses Defendant's concerns below, and finds that the

outstanding issues of law may be easily resolved through pre-trial motions and do not weigh in favor of the Court granting Defendant's motion.

### a. Law Governing Tariff Construction: Michigan Law or Federal Common Law

First, Defendant contends that if the Court properly sits in federal question jurisdiction, then the Court must apply federal common law to interpret the Tariff, not Michigan law.  (See id. at 28.)  In contrast, Plaintiff argues that the parties' contracts, and thus the Tariff that is incorporated into the parties' contracts, "should be governed according to the law that would apply even if there were no regulation of the contract's subject matter."  (See Pl.'s Mem. at 23 [Doc. No. 888].)  Therefore, Great Lakes argues that Michigan common law controls the Court's Tariff construction.

As an initial matter, the Court notes that it is unclear what "federal common law" ESML believes should apply.  The court assumes that ESML intended to argue that the Court should have interpreted the Tariff using the judicial canons of statutory interpretation.[5]  However, even if the Court should have interpreted the Tariff using those canons, the Court's reading of the Tariff would not have changed.

---

[5]     As Plaintiff correctly explains, "there is no federal general common law" and the "vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law."  Tex. Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640 (1981). In Texas Industries, Inc., the Supreme Court clearly defined the two instances where "federal common law" exists and applies: (1) where a federal rule of decision is needed to protect uniquely federal interests; and (2) where Congress has expressly given the courts power to develop substantive law.  See id.  However, because this case does not appear to implicate uniquely federal interests, and because Congress has not expressly given the courts power to develop substantive law for disputes arising under the NGA, the Court finds that this case does not fall into the few categories where federal common law exists.

As the Court explained in its May 15, 2012 Order, the "plain language" of the

Force Majeure and Remedies clauses was "most determinative" in interpreting the

meaning and application of those clauses.  (See 5/15/12 Order at 18 [Doc. No. 397].)

Similarly, in all cases requiring statutory interpretation, the Court must also begin "by

analyzing the statutory [or regulatory] language."  United States v. Smith, 756 F.3d 1070,

1073 (8th Cir. 2014); Northshore Min. Co. v. Sec. of Labor, 709 F.3d 706, 709 (8th Cir.

2013) (explaining that in order "[t]o resolve the ambiguity [of a federal regulation], in

addition look to the agency's own interpretation of the regulation for guidance, we utilize

established rules of statutory construction.") (citing Chase Bank USA v. McCoy, 131 S.

Ct. 871, 878–80 (2011) (applying rules of statutory construction and finding an ambiguity

in a regulation)).  Therefore, even if the Court had formally used the tools of statutory

construction, the Court's inquiry would have been exactly the same – the analysis would

have begun, and ended, with the plain language of the Tariff provisions, which

---

The Court also notes that the two cases Defendant cites as supporting the proposition that the Tariff should be interpreted pursuant to federal common law are entirely distinguishable.  In Prudential Insurance Co. of America v. Doe, the Eighth Circuit held that federal common law governed the court's interpretation of a benefit plan because the plan fell within the ambit of ERISA's "broad preemptive scope" and thus, ERISA completely preempted the field.  See 140 F.3d 785, 791 (8th Cir. 1998).  In contrast, here, the preemption doctrine does not apply.

Moreover, the second case Defendant cites, Pennzoil Co. v. FERC, 645 F.2d 360 (5th Cir. 1981), directly contradicts Defendant's claim that federal common law applies to this case.  In Pennzoil Co., the Fifth Circuit determined which law should govern interpretation of escalation provisions in gas purchase contracts, which were entered into under the NGA.  See 645 F.2d at 387.  The court held that because "there [was] no significant conflict between any federal interest and the use of state law in the interpretation" of the provisions in the contracts, "the appropriate contract law to apply [was] the law that would govern the parties' dealings were there no regulation at all of the contract's subject matter."  Id.  Accordingly, if the same principle is applied to this case, then Michigan law would in fact govern the Court's interpretation of the contract.

demonstrates that the Force Majeure clause does not include financial crises or changes in financial conditions.  (See 5/15/12 Order at 18 [Doc. No. 397]; 4/19/13 Order at 31 [Doc. No. 559].)  Therefore, insofar as Defendant claims that the Court's jurisdictional ruling alters the way it should interpret the Tariff, the Court disagrees.

### b.  Prejudgment Interest Rate

Defendant explains that earlier, when the Court proceeded with the assumption that it was sitting in diversity jurisdiction, the Court applied Minnesota choice of law principles and determined that while Michigan law governed the substance of Plaintiff's claims, Minnesota law governed the procedural aspects of the case.  (See Def.'s Mem. at 29–30 [Doc. No. 885].)  ESML contends that now that the Court has determined it sits in federal question jurisdiction, the Court's prior determination of which prejudgment interest rate to apply was incorrect.  (See id. at 30.)  Rather than applying Minnesota's 10% prejudgment interest rate, ESML contends that the Court should apply one of the following interest rates:

- 28 U.S.C. § 1961, the federal postjudgment interest statute (0.24%). See, e.g., Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1331 (8th Cir. 1995).
- Existing market rates, such as average prime interest rates or U.S. Treasury bill rates (0.23%).  See, e.g., Floe Int'l, Inc. v. Newman's Mfg. Inc., 2006 WL 2472112, at *8 (D. Minn. Aug. 23, 2006).
- The Michigan prejudgment interest rate statute (2.678%) because, under federal choice of law principles, prejudgment interest is governed by the substantive law designated in a contractual choice of law provision. Where parties have chosen a state's law "to govern their contractual rights and duties," (in this case, Michigan law), that same state's laws will govern "whether plaintiff can recover interest, and, if so, the rate, upon damages awarded him for the period between breach of contract and the rendition of judgment."  Restatement (Second) of Conflicts of Laws §§ 187(2), 207, 207 cmt. E; see also Grand Isle Shipyard, Inc. v.

39

> <u>Seacor Marine, LLC</u>, 589 F.3d 778, 809 (5th Cir. 2009) ("courts have
> relied upon the Restatement (Second) of Conflict of the Law for the
> content of federal common law") (citing cases).
> - If the Court's finding that the Tariff governs Plaintiff's right to recovery
>   is accurate (May 4 Order at 30–31), the prejudgment interest rate
>   specified in Section 9.4 of the Tariff, which governs failures to pay
>   (3.25%). <u>See</u> Tariff at Eighth Revised Sheet No. 22, ¶ 9.4.

(<u>See</u> Def.'s Mem. at 31 [Doc. No. 885].)  Moreover, ESML contends that in order for the

Court to determine which of these rates apply, additional fact and expert discovery is

necessary.  (<u>See</u> <u>id.</u>)

In opposition, Plaintiff argues that the Court was well within its permitted

discretion when it selected the Minnesota prejudgment interest rate, and even if the Court

decides to apply a different interest rate, "that question is purely a matter of law for the

Court" that will not require additional fact and expert discovery.  (<u>See</u> Pl.'s Mem. at 24–

27 [Doc. No. 888].)  The Court agrees with Plaintiff – determining which prejudgment

interest rate applies is a question of law.  Therefore, additional fact and expert discovery

is unnecessary.

The Court will nonetheless permit the parties to file pre-trial briefing directly

addressing which prejudgment interest rate is the most applicable, given that the Court

has determined it has federal question jurisdiction, as opposed to diversity jurisdiction.

(<u>See</u> Letter from Mr. Flaum (requesting permission for additional briefing on applicable

prejudgment interest law that applies) [Doc. No. 889].)  Yet, simply because the Court

must decide this issue of law before trial begins does not weigh in favor of the Court

granting Defendant's motion.

### c. Elements of Breach of Contract Claim

Defendant takes issue with the Court analyzing Plaintiff's breach of contract claim pursuant to the elements required under Michigan law.  (See Def.'s Mem. at 32 [Doc. No. 885].)  In the May 4 Order, the Court explained that under Michigan law, a plaintiff must establish the following elements to prove breach of contract: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damages as a result of the defendant's breach.  See Miller–Davis Co., 848 N.W.2d at 103.

ESML claims that the elements generally required to prove a breach of contract claim do not apply because the Court earlier determined that Plaintiff had proved, as a matter of law, that Defendant breached the contract by anticipatorily repudiating.  (See Def.'s Mem. at 32 [Doc. No. 885]; 3/19/13 Order at 38–44 [Doc. No. 559].)  The Court finds that Defendant misunderstands the relationship between the elements of Plaintiff's prima facie case and the Court's prior discussion of anticipatory repudiation.

Plaintiff's anticipatory repudiation claim is not distinct from its breach of contract claim.  (See First Am. Compl. ¶¶ 48–54 [Doc. No. 35].)  Rather, "breach," the second element required to prove a breach of contract claim, may be evidenced by showing how the defendant anticipatorily repudiated its obligations under a contract.  As the Michigan Court of Appeals explains, "[a]n anticipatory breach of contract is defined as a 'definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.'"  36th Dist. Court v. Michigan AFSCME Council 25, No. 285123, 2009 WL 3103829, at *1 (Mich. Ct. App. Sept. 29, 2009) (internal citation omitted).  Thus, by anticipatorily

repudiating its obligations, Defendant breached the contract.  However, to succeed on its

breach of contract claim, Plaintiff needed to demonstrate that it suffered damages as a

result of Defendant's breach.  "Damages for an anticipatory repudiation are to represent

*full compensation* for the loss caused by depriving the plaintiff of the benefit of the

bargain."  Stanton v. Dachille, 463 N.W.2d 479, 482 (Mich. Ct. App. 1990) (emphasis

added).  Consequently, Plaintiff is entitled, at least, the full amount it was due under the

contract.  See Benson Associates, Inc. v. Bodytechniques, Inc., No. 228852, 2002 WL

1308350, at *10 (Mich. Ct. App. June 11, 2002).

Insofar as Defendant argues that the Court has never discussed whether Plaintiff

has shown that it actually suffered damages (see Def.'s Mem. at 32 [Doc. No. 885]), the

Court disagrees.  At summary judgment, the Court determined that Plaintiff was entitled

the damages it sought, and Defendant's defenses were meritless.  (See 4/19/13 Order at

23 [Doc. No. 559].)  Great Lakes sought, and still seeks, to "recover damages for breach

of contract based on its Tariff rate, which is the reservation charges due under the TSA."

(See Pl.'s Mem. in Opp'n at 14 [Doc. No. 429].)  Therefore, the upcoming trial need not

address the issue of "whether Plaintiff has actually suffered any damages," (cf. Def.'s

Mem. at 33 [Doc. No. 885]), because the Court has already determined that Plaintiff did

suffer damages, as a matter of law.  However, the precise amount of the damages remains

a disputed issue and must be resolved through trial.

### d.  Court Need Not Analyze Additional Tariff Provisions

Fourth, Defendant argues that the Court should grant an interlocutory appeal

because if the Court proceeds in federal question jurisdiction then it must analyze

additional Tariff provisions that may impact Plaintiff's damages award.  (See id.)  For instance, ESML contends that the Court should consider how the following waiver provision affects Plaintiff's damages: "Transporter [Great Lakes] may waive any rights hereunder or any obligations of Shipper applicable to any specific default that has already occurred."  (See id.) (quoting Tariff at Second Revised Sheet No. 37 ¶ 13.3).

As an initial matter the Court notes that the waiver provision raised by Defendant does not apply to the parties because Great Lakes did not waive its rights to pursue its breach of contract claim based on Defendant's anticipatory repudiation of the contract. Moreover, the Court finds that it does not need any more time to review the applicable Tariff provisions.  Over the past six or so years, the Court and the parties have had multiple opportunities to analyze the Tariff and the TSA.  The Court is confident that its analysis and review has exhausted the applicability of relevant Tariff provisions.

### e.  Jurisdictional Basis Over Foreign Essar Defendants

Fifth, Defendant argues that the Court's May 4 Order was unclear as to whether or how the Court had jurisdiction over Plaintiff's claims against the Foreign Essar Defendants.  (See Def.'s Mem. at 33 [Doc. No. 885].)  Plaintiff, however, was not confused by how the May 4 Order implicated the Court's jurisdictional basis over the Foreign Essar Defendants.  (See Pl.'s Mem. at 28 [Doc. No. 888].)  To clarify and resolve any remaining doubt that Defendant may have, the Court holds that because it has federal question jurisdiction over Plaintiff's Count One, it exercises supplemental jurisdiction over Plaintiff's remaining claims against the Foreign Essar Defendants.  According to 28 U.S.C. § 1367(a), the Court "shall have supplemental jurisdiction over all other claims

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Here, the Court exercises its supplemental jurisdiction because (1) all of Plaintiff's claims stem from the exact same event – Defendants anticipatorily repudiating their contractual duties under the Tariff, and (2) the Court has original federal question jurisdiction over Plaintiff's Count One.  Therefore, the Foreign Essar Defendants' offer of judgment remains valid.

### 4.  Additional Issues to be Resolved Pre-Trial

Finally, Defendant contends that the Court should grant the interlocutory appeal because there are a number of outstanding issues that are "unrelated to the May 4 Order that will require substantial attention."  (See Def.'s Mem. at 34 [Doc. No. 885].)  Specifically, ESML argues that the Court must still issue rulings on the parties' motions in limine, which are not yet filed, and must also issue a ruling on Defendant's request to file a motion for reconsideration on the Court's order excluding the testimony of Defendant's damages expert, Laura Stamm.  (See id.)  The Court intends to rule on any outstanding motions in limine once they are filed, and, in short order, intends to rule on Defendant's request to file a motion for reconsideration.  The need to issue these rulings is not a sufficient basis for the Court to conclude that certification will materially advance the ultimate resolution of this litigation.  Moreover, insofar as Defendant argues that it "should not have to waste resources deposing [Plaintiff's fact] witnesses before the Court has ruled on its [not yet filed] motion to exclude them," (see id. at 35), the Court disagrees.  Parties must always make strategic choices about whether or not to depose

witnesses before a court has had the opportunity to rule on the admissibility of the witnesses' testimony.

ESML also notes that the parties must still meet and confer to resolve extensive objections by each side to proposed exhibits and deposition designations.  (See id. at 34.) Because the parties still have approximately two months to prepare for trial, which was originally scheduled to take place in October 2014, the Court finds that the parties have sufficient time to meet and confer in the coming weeks and months.  In sum, the Court finds that the third element required for certification is also not satisfied – immediate appeal will not materially advance the ultimate termination of the litigation.  Because Defendant has failed to demonstrate two of the three necessary criteria for certification, the Court finds that this is not an exceptional case in which appeal is warranted.  See White, 43 F.3d at 376.

Plaintiff contends that two issues remain for the jury to determine at trial: (1) the discount rate to apply to future damages; and (2) whether the discount rate to apply to future damages is pre- or post-tax.  Great Lakes also notes that the Court must still determine which Tariff rate must be used to calculate Plaintiff's damages, since that Tariff rate has changed.  Plaintiff contends that this is an issue of law, not an issue of fact, that the Court must decide pre-trial.  Insofar as Plaintiff considers this to be the case, the Court instructs Plaintiff to file a motion in limine clarifying Plaintiff's position on this issue of law.  The Court also instructs the parties to file pre-trial briefing clarifying their positions on which law (Michigan, Minnesota, or otherwise) controls the prejudgment interest rate that applies to Plaintiff's damages.

## IV.    CONCLUSION

This Court has determined that the case will be ready for trial on August 17, 2015. The parties have engaged in extensive discovery and motion practice.  In light of the nature and posture of the case, the Court finds that Defendant has failed to satisfy all three of the requirements for certification of interlocutory appeal under § 1292(b).  This case does not fall within the exceptional and limited circumstances warranting such certification.  Because the Court denies Defendant's request for an interlocutory appeal, by necessity, the Court also denies Defendant's request for the Court to stay this litigation pending the result of the appeal.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant Essar Steel Minnesota LLC's Motion to Amend the May 4, 2015 Order to Certify for Interlocutory Appeal [Doc. No. 884] is **DENIED**.

2. The parties must appear for a pre-trial hearing on Tuesday, August 11, 2015 at 2 pm in Courtroom 7B, Warren E. Burger Federal Building, 316 North Robert Street, St. Paul, Minnesota.

3. Trial is scheduled to begin at 9 am on August 17, 2015, at the federal courthouse in Duluth: Gerald W. Heaney Federal Building, 515 West First Street, Duluth, Minnesota.

4. The Court will issue a pre-trial schedule shortly.


Dated:  June 25, 2015                              s/Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Judge