UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Great Lakes Gas Transmission Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>Essar Steel Minnesota, LLC; Essar Steel Limited f/k/a Essar Steel Holdings, Ltd.; Essar Steel India Limited f/k/a Essar Steel Limited; and Essar Global Fund Ltd. f/k/a Essar Global Limited,<br><br>Defendants. | Case No. 09-cv-3037 (SRN/LIB)<br><br><br>**AMENDED[1] MEMORANDUM OPINION AND ORDER** |

Brian A. Farlow, Hayley Ellison, Worthy W. Walker, Barbara L. Wohlrabe, and David W. Elrod, Elrod PLLC, 500 North Akard Street, Suite 3000, Dallas, TX 75201; Cooper S. Ashley, David T. Schultz, and Julian C. Zebot, Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, for Plaintiff.

Douglas H. Flaum, Kevin P. Broughel, and Shahzeb Lari, Paul Hasting LLP, 75 East 55th Street, New York, NY 10022; Eric A. Hirsch, Fried Frank Harris Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004; Lousene M. Hoppe and Nicole M. Moen, Fredrikson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402-1425; Ryan Stutzman, David M. Johnson, and Thomas R. Thibodeau, Thibodeau, Johnson, and Feriancek PLLP, 800 Londsdale Bldg., 302 W. Superior Bldg., Duluth, MN 55805, for Defendants.

---

[1] This Order is amended solely to clarify that according to Section 154.501 of the Commission's Regulations, the annual interest rate for the relevant time period in this case is 3.25%, which is compounded quarterly. See 18 C.F.R. 154.501(d)(1).

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on the following motions: (1) Defendant's Motion in Limine Regarding Applicable Prejudgment Interest Rate [Doc. No. 919]; (2) Plaintiff's Motion in Limine No. 14: Regarding Prejudgment Interest [Docs. No. 917, 923]; and (3) Plaintiff's Motion in Limine No. 15: Applicable Tariff Rates [Doc. No. 917]. Defendant's Motion and Plaintiff's Motion in Limine No. 14 concern the same issue: the appropriate prejudgment interest rate to apply in this case. Plaintiff's Motion in Limine No. 15 pertains to which Tariff rate(s) apply for the calculation of Plaintiff's damages. For the reasons set forth below Defendant's motion is granted, in part; Plaintiff's Motion No. 14 is denied; and Plaintiff's Motion No. 15 is granted.

## II. DISCUSSION

### A. Prejudgment Interest Rate

Plaintiff Great Lakes Gas Transmission Limited Partnership ("Plaintiff" or "Great Lakes") argues that "[t]he appropriate rate of prejudgment interest to be applied to Great Lakes' damages is the ten percent (10%) Minnesota statutory rate." (See Pl.'s Mem. in Support at 1 [Doc. No. 923].) Plaintiff contends that the Minnesota statutory rate should apply because "Great Lakes' breach of contract claim is essentially a state law claim (albeit raising substantial federal questions)." (See id.)

Defendant Essar Steel Minnesota, LLC ("Defendant" or "ESML") disagrees. Defendant argues that because the Court "is proceeding on the basis of federal question jurisdiction," (see Def.'s Mot. in Limine at 2 [Doc. No. 919]), federal law governs the

2

prejudgment interest analysis. (See Def.'s Opp'n Mem. to MIL No. 14 at 2 [Doc. No. 928].) Accordingly, ESML contends that 28 U.S.C. § 1961 provides the relevant prejudgment interest rate. (See Def.'s Mot. in Limine at 4 [Doc. No. 919].) In the alternative, Defendant argues that the source of federal law that governs the applicable prejudgment interest rate is the "Failure to Pay" provision in the Tariff. (See id. at 6.) Finally, ESML argues that "[t]o the extent the Court decides that state, not federal, law should govern prejudgment interest, the appropriate state law would be Michigan law, not Minnesota law." (See id. at 7.)

"Generally, the award of prejudgment interest, in the absence of statutory directives, rests in the discretion of the district court." Cargill, Inc. v. Taylor Towing Serv., Inc., 642 F.2d 239, 241–42 (8th Cir. 1981) (citing Mid-Am. Transp. Co. v. Rose Barge Line, Inc., 477 F.2d 914, 916 (8th Cir. 1973); Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp., 534 F.2d 422 (2d Cir. 1975), cert. denied, 429 U.S. 825 (1976)). Courts regularly award prejudgment interest "whenever damages lawfully due are withheld, unless there are exceptional circumstances to justify the refusal." Cargill, Inc., 642 F.2d at 242 (citing United States v. Motor Vessel Gopher State, 614 F.2d 1186, 1190 (8th Cir. 1980); The Wright v. Petroleum Nav. Co., 109 F.2d 699, 702 (2d Cir. 1940)). The Court is cognizant of the fact that "[a]warding prejudgment interest is intended to serve at least two purposes: to compensate prevailing parties for the true costs of money damages incurred, and, where liability and the amount of damages are fairly certain, to promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation." Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743,

3

752 (8th Cir. 1986) (citing General Facilities, Inc. v. Nat'l Marine Serv., Inc., 664 F.2d 672, 674 (8th Cir. 1981)).

In Mansker v. TMG Life Ins. Co., the United States Court of Appeals for the Eighth Circuit explained that "'[t]he question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute.'" See 54 F.3d 1322, 1330, (8th Cir. 1995) (quoting Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1218 (8th Cir. 1981), cert. denied, 454 U.S. 968 (1981)). In contrast, for pendent state law claims and for claims arising under a federal court's diversity jurisdiction, "state law governs prejudgment interest." See, e.g., Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc., 476 F.3d 594, 595–97 (8th Cir. 2007) (applying state law's prejudgment interest rate to state law claim arising under the court's diversity jurisdiction); Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 (8th Cir. 2003) (same); Freeman v. Package Mach. Co., 865 F.2d 1331, 1345 (1st Cir. 1988) (applying state law for prejudgment interest calculation for pendent state law claim); Mallis v. Bankers Trust Co., 717 F.2d 683, 692 n.13 (2d Cir. 1983) (explaining that state law applies for prejudgment interest analysis for pendent state law claims); United States ex rel. Hoover v. Franzen, 669 F.2d 433, 437–38 (7th Cir. 1982) (same).

Great Lakes contends that the nature of its breach of contract claim is state law; and thus, state law controls the prejudgment interest analysis. (See Pl.'s Mem. in Support at 3 [Doc. No. 923].) However, the Court held in its May 4, 2015 Order that this case arises under federal law because resolution of Plaintiff's breach of contract claim requires the Court to analyze several Tariff provisions. (See generally 5/4/15 Order [Doc. No.

4

879]; 6/25/15 Order at 5 [Doc. No. 890].) The Tariff incorporates the underlying Contract between the parties, provides the terms and conditions that governs the parties' rights and obligations, and has the force of a federal regulation or statute. (See 5/4/15 Order at 4, 27, 44 [Doc. No. 879].) Because Plaintiff's contract claim requires the Court to analyze several Tariff provisions, and the Tariff constitutes federal law, Plaintiff's claim raises necessarily disputed and substantial federal questions. (See generally id.; 6/25/15 Order at 5 [Doc. No. 890].) The Court reiterates its previous rulings and holds that "[a] case 'arises under' federal law if the Court must determine a disputed and substantial question when addressing a 'necessary element of one of the well-pleaded state claims.'" (See 5/4/15 Order at 29 (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13 (1983)) [Doc. No. 879].) Accordingly, since Plaintiff's case "arises under" federal law, the Court's prejudgment interest analysis "is a question of federal law." See Mansker, 54 F.3d at 1330; Dependahl, 653 F.2d at 1218.

One source of federal law that informs the Court's prejudgment interest analysis is 28 U.S.C. § 1961. As the Eighth Circuit explained in Dependahl, "section 1961 provides useful guidance in the area of prejudgment interest." Dependahl, 653 F.2d at 1219 (explaining that § 1961 is instructive for both prejudgment and postjudgment interest calculations). Pursuant to § 1961:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

> System, for the calendar week preceding. [sic] the date of the judgment.
> The Director of the Administrative Office of the United States Courts shall
> distribute notice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961. Although § 1961 currently provides that the rate of prejudgment interest shall be the equivalent of "the weekly average 1-year constant maturity Treasury yield," before 1982, § 1961 provided that the prejudgment interest rate would be "the rate allowed by State law."[2] See Interest on Judgments, Pub. L. No. 97-164, 96 Stat. 55 (1982). Presently, the "weekly average 1-year constant maturity Treasury yield" is about 0.33%. (See Broughel Decl., Ex. 4, "Board of Governors of the Federal Reserve System" [Doc. No. 907-4]); Black v. Binding Specialties, Inc., No. CIV.A. 09-3670 NLH, 2012 WL 602766, at *1 (D.N.J. Feb. 23, 2012) (applying the 1-year constant maturity Treasury yield as of the week prior to the date of the order).

An additional source of federal law that informs the Court's prejudgment interest analysis is the "Failure to Pay" provision in the governing Tariff. (See Defs.' Answer, Ex. B, "Tariff" § 9.4 [Doc. No. 80-2];[3] Goldstein Decl., Ex. 4, "Tariff" § 6.9.4 [Doc. No. 425-5].[4]) The "Failure to Pay" section provides:

> Should Shipper [ESML] fail to pay all of the amount of any statement as
> herein provided when that amount is due, interest on the unpaid portion of
> the bill shall accrue at the rate set forth in Section 154.501 of the
> Commission's Regulations, from the due date until the date of payment.

---

[2]  For this reason, in Dependahl, the Eighth Circuit incorporated state law into its determination of the proper prejudgment interest rate. See Dependahl, 653 F.2d at 1219.

[3]  Doc. No. 80-2 is the Second Revised version of the Tariff.

[4]  Doc. No. 425-5 is the Third Revised version of the Tariff. Although the "Failure to Pay" provision of the Tariff is incorporated into a different sub-section in the Third Revised version of the Tariff (§ 9.4, as opposed to § 6.9.4), the content of the provision is exactly the same as the "Failure to Pay" provision in the Second Revised version of the Tariff.

> Transporter [Great Lakes] may, on a not unduly discriminatory basis, exercise its right to waive accrual of interest on any unpaid portion. Transporter shall have the right, pursuant to Section 6.26.2(E) of the General Terms and Conditions of this FERC Gas Tariff, Third Revised Volume No. 1, to suspend or terminate service to Shipper in addition to any other remedy Transporter may have hereunder.

See id. In other words, the Tariff specifies that any interest to be paid on payments not made by ESML will be calculated as set forth in Section 154.501 of FERC's regulations. According to Section 154.501 of the Commission's Regulations, the annual interest rate for the relevant time period is 3.25%, which is compounded quarterly. See 18 C.F.R. 154.501(d)(1); (Broughel Decl., Ex. 5, "FERC Interest Rates" [Doc. No. 907-5]).

Here, the Court holds that the Tariff prejudgment interest rate applies. While "section 1961 provides useful guidance in the area of prejudgment interest," Dependahl, 653 F.2d at 1219, the Court uses its discretion to find that a 0.33% interest rate is too low to achieve the twin purposes of awarding prejudgment interest. See Stroh Container Co., 783 F.2d at 752; Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 313 F.3d 1087, 1092–93 (8th Cir. 2002) (holding that, even though the plaintiff's claim arose under federal law, the district court did not erroneously apply South Dakota's prejudgment interest rate because the court was empowered to use its discretion to determine the appropriate rate). Specifically, the Court finds that in order to ensure that ESML does not benefit unfairly from delaying litigation for six years, in a case where liability is certain, the Tariff's 3.25% interest rate is more reasonable and fair than the 0.33% rate set out in § 1961. See id.; Architectural Contractors, Inc. v. Schilli Transp. Servs., Inc., No. 5:13-CV-05179, 2014 WL 7369254, at *2 (W.D. Ark. Dec. 29, 2014) (explaining that the award of

7

prejudgment interest requires that "[o]ne who has had the use of money owing to another . . . pay interest from the time payment should have been made") (internal quotations and citations omitted) (alteration in original); Werner Enterprises, Inc. v. Westwind Maritime Int'l, Inc., 554 F.3d 1319, 1328–29 (11th Cir. 2009) (explaining that a court's determination of which prejudgment interest rate to apply is "guided by principles of reasonableness and fairness, by relevant state law, and by the relevant fifty-two week United States Treasury bond rate").

Application of the Tariff interest rate also ensures uniformity for calculating prejudgment interest. While Defendant aptly notes that application of the § 1961 interest rate promotes uniformity in ERISA cases, the Court finds that, for cases invoking federal tariffs, uniformity is achieved by applying the interest rates adopted in the tariffs themselves. (Cf. Def.'s Mot. in Limine at 5 [Doc. No. 919].) In fact, in at least one other case where a defendant failed to pay a plaintiff pursuant to a federal tariff, a court in the Southern District of New York applied a prejudgment interest rate that was set forth in the FCC Tariff governing the parties' obligations. WorldCom, Inc. v. Voice Plus Intern., Inc., No. 97-cv-8265 (DLC), 2000 WL 12146, at *2–3 (S.D.N.Y. Jan. 6, 2000), judgment amended on other grounds, 2000 WL 274182 (S.D.N.Y. Mar. 13, 2000).

In contrast, ESML correctly explains that uniformity could not achieved if the Court were to utilize an individual state's prejudgment interest rate. (See Def.'s Opp'n Mem. to MIL No. 14 (stating that "[n]o such uniformity would be possible if a plaintiff could receive differing damages under the same tariff, depending on which state it filed suit") at 3 [Doc. No. 928].) As the Court held in its May 4, 2015 Order, "resolution of

8

the actually disputed federal issues in this case – the interpretation and application of the Tariff provisions – is significant to the federal system as a whole." (See 4/5/15 Order at 40 [Doc. No. 879].) Thus, to ensure uniformity is preserved in this case and the federal system as a whole, the Court relies on the agreed upon terms of the Tariff. Because state law does not guide the Court's prejudgment interest analysis in this case, the Court need not address the parties' arguments about the applicability of Michigan and Minnesota state law.[5] In sum, the Court holds that the Tariff's 3.25% prejudgment interest rate applies.[6] Accordingly, Defendant's Motion [Doc. No. 919] is granted, in part, insofar as ESML advocates for application of the Tariff's prejudgment interest rate; and Plaintiff's Motion in Limine No. 14 [Doc. No. 917] is denied.

### B. Relevant Dates for Prejudgment Interest Calculation

As part of the prejudgment interest analysis, the Court must also determine the correct date on which prejudgment interest begins and concludes accruing. "Prejudgment interest typically accrues from the date of the loss or from the date on which the claim

---

[5] Insofar as Plaintiff argues that this Court's ruling in Ewald v. Royal Norwegian Embassy, No. 11-cv-2116 (SRN/SER), 2015 WL 1746375 (D. Minn. Apr. 13, 2015) is instructive, the Court disagrees. (Cf. Pl.'s Mem. in Support at 8 [Doc. No. 923]; Pl.'s Rep. at 5 [Doc. No. 938].) In Ewald, the plaintiff "asserted the majority of her claims under [Minnesota] state law," and accordingly argued for the application of the Minnesota statutory rate because Minnesota "state law provide[d] the rule of decision." (Broughel Suppl. Decl., Ex. 4, "Ms. Ewald's Mem. in Support of Attorneys' Fees and Costs Petition" at 36 –37 [Doc. No. 933-1].) For this very reason, the Court held that the award of prejudgment interest in Ewald was governed by state law. See Ewald, 2015 WL 1746375, at *21–*22. In contrast, here, Plaintiff's claim plainly arises under federal law.

[6] The Court notes that Plaintiff correctly argues that the prejudgment interest rate in the Tariff does not limit Great Lakes from obtaining additional damages from ESML. (See Pl.'s Resp. at 9 [Doc. No. 938].) Rather, the "Failure to Pay" provision merely provides guidance for the Court's calculation for a portion of damages to which Plaintiff is entitled.

accrued," until the date of judgment. See Architectural Contractors, Inc., 2014 WL 7369254, at *2 (citing W. Va. V. United States, 479 U.S. 305, 310 n.2 (1987)). In its March 11, 2014 Order, the Court held that prejudgment interest should be computed in this case from September 3, 2009, the date Great Lakes sent written notice of its claim to ESML. (See 3/11/14 Order at 10–11 [Doc. No. 755].) At the time the Order was written, the Court believed that, because it sat in diversity jurisdiction, Minnesota state law applied to the prejudgment interest calculation. For that reason, the Court relied on Minn. Stat. § 549.09, subd.1(b) as guidance for determining the relevant "as of" date for assessing prejudgment interest. (See id.) Because the Court now recognizes that its sits in federal question jurisdiction, and because the Court has held that the Tariff provides the relevant prejudgment interest rate, the Court also looks to the Tariff for guidance on dates of accrual.

Here, the Tariff provides that prejudgment interest shall accrue "from the due date [of any unpaid statement] until the date of payment." (See Goldstein Decl., Ex. 4, "Tariff" § 6.9.4 [Doc. No. 425-5].) The first payment that Defendant failed to make was due on August 17, 2009. (Am. Compl. ¶ 20 [Doc. No. 35].) Therefore, in this case, prejudgment interest began to accrue August 17, 2009, and will conclude accruing on the date "judgment is entered." See W. Va. V. United States, 479 U.S. at 310 n.2.[7] Accordingly, the date of judgment will also serve as the start date for the parties' calculation for Plaintiff's discounted future damages.

---

[7] The Court also notes that Plaintiff correctly contends that "'past' payments may be awarded at full value *with*[, or in addition to,] associated prejudgment interest." (See Pl.'s Tr. Brief at 8 (emphasis original) [Doc. No. 918].)

10

### C. Applicable Tariff Rates

Finally, in order to calculate the relevant prejudgment interest, and the discounted future damages, the Court must determine the applicable Tariff rates. In the Court's March 11, 2014 Order, the Court instructed the parties to consider "the applicability of the specific changed Tariff rate" in calculating the damages that Plaintiff is entitled. (See 3/11/14 Order at 63 [Doc. No. 755].) In its trial brief and pretrial motion, Great Lakes explains that the Tariff rates have changed twice since this lawsuit was filed. (See Pl.'s Tr. Brief at 7 [Doc. No. 918]; Pl.'s Mot. in Limine No. 15 at 12 [Doc. No. 917].) Specifically, from August 1, 2009 to May 1, 2010, ESML's monthly payment due under the Tariff was $190,190; and effective May 1, 2010, that monthly payment was reduced from $190,190 to $174,955. Additionally, effective November 1, 2013, the monthly payment was increased from $174,955 to $211,695, which remains the monthly payment due under the Tariff for the "foreseeable future." (See Pl.'s Tr. Brief at 7 [Doc. No. 918].) ESML does not dispute these changes to the FERC-approved rates.

However, Defendant claims that:

> It is unclear whether Plaintiff is arguing that the Court should apply Great Lakes' actual Tariff rates solely to Plaintiff's past due damages or whether Great Lakes is also advocating that the Court apply Great Lakes' actual Tariff rates to Plaintiff's future damages, which would be impossible as it is unknown whether Great Lakes' Tariff rate will change between now and 2024, when the TSA terminates.

(See Def.'s Opp'n Mem. at 13 [Doc. No. 927].) The Court reads Plaintiff's trial brief and pretrial motion as arguing that the Tariff rates should apply to both Plaintiff's past due damages and future damages. Therefore, the Court holds that the calculation of

Plaintiff's past due damages and prejudgment interest on those damages must incorporate the Tariff rates changes that occurred over the past few years.

As for the applicability of the current Tariff rate ($211,695 per month) to the calculation of Plaintiff's future damages, the Court finds that the parties must use this Tariff rate for determining Great Lakes' discounted future damages. Although Defendant contends that Great Lakes is disavowing its expert's analysis by using the current Tariff rate to calculate Plaintiff's future damages, the Court disagrees. (Cf. id.) Plaintiff's expert, Dr. A. Lawrence Kolbe, stated in his initial report that, for purposes of calculating the future damages discount rate, "there was no reason to believe the FT tariff would do anything but stay constant or increase," as of the date of accrual. (See Broughel Decl., Ex. 2, "Kolbe Report" at 22–23 [Doc. No. 783].) However, Dr. Kolbe also included a sensitivity test that "substitute[d] the actual FT tariff rates observed to date for the initial level used in the other analysis . . . [and] assume[d] today's FT tariff will last until the end of the TSA" (id. at 32). Thus, Plaintiff's argument that the Tariff rates should be applied as they have changed over time does not constitute a complete disavowal of Dr. Kolbe's expert analysis. Accordingly, the Court grants Plaintiff's Motion in Limine No. 15 [Doc. No. 917].

Given the Court's rulings pertaining to the applicable prejudgment interest rate, the relevant dates for the prejudgment interest calculation, and the applicable Tariff rates, the parties are ordered to prepare a calculation of prejudgment interest to present at trial.

## III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion in Limine Regarding Applicable Prejudgment Interest Rate [Doc. No. 919] is **GRANTED, in part**, as provided herein;

2. Plaintiff's Motion in Limine No. 14: Regarding Prejudgment Interest [Doc. No. 917] is **DENIED**; and

3. Plaintiff's Motion in Limine No. 15: Applicable Tariff Rates [Doc. No. 917] is **GRANTED**.

4. Given the applicable prejudgment interest rate, the relevant dates for prejudgment interest calculation, and the applicable Tariff rates, the parties must prepare a calculation of prejudgment interest to present at trial.

Dated: August 13, 2015              s/Susan Richard Nelson
                                    SUSAN RICHARD NELSON
                                    United States District Judge