# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Great Lakes Gas Transmission Limited Partnership, | Case No. 09-cv-3037 (SRN/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Essar Steel Minnesota, LLC; Essar Steel Limited f/k/a Essar Steel Holdings, Ltd.; Essar Steel India Limited f/k/a Essar Steel Limited; and Essar Global Fund Ltd. f/k/a Essar Global Limited, | |
| Defendants. | |

Brian A. Farlow, Hayley Ellison, Worthy W. Walker, Barbara L. Wohlrabe, and David W. Elrod, Elrod PLLC, 500 North Akard Street, Suite 3000, Dallas, TX 75201; David T. Schultz and Julian C. Zebot, Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, for Plaintiff.

Douglas H. Flaum, Kevin P. Broughel, and Shahzeb Lari, Paul Hasting LLP, 75 East 55th Street, New York, NY 10022; Lousene M. Hoppe and Nicole M. Moen, Fredrikson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402-1425; Thomas R. Thibodeau and David M. Johnson, Thibodeau Johnson & Feriancek, PLLP, 302 W. Superior Street, Suite 800, 800 Lonsdale Building, Duluth, MN 55802, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Essar Steel Minnesota, LLC's ("ESML") Motion for New Trial ("Motion") [Doc. No. 980]. For the reasons that follow, ESML's Motion is denied.

## I.      BACKGROUND

### A.  Factual Background

The factual history of this case, which is entering its sixth year of litigation, is extensively recounted in the prior opinions and orders of this Court.   It is briefly summarized here.

In short, this case arises from a contract ("Contract") dated September 6, 2006, between Great Lakes ("Plaintiff" or "Great Lakes") and Minnesota Steel Industries ("MSI"), which became effective on November 30, 2006.  (Ellison Aff., Ex. 2 "Contract" [Doc. No. 681-2].)  The Contract required Great Lakes to transport up to 55,000 dekatherms of natural gas per day on MSI's behalf.  (Id.)   The Contract, otherwise known as the Transportation Services Agreement ("TSA"), was to govern the parties' relationship from July 1, 2009 through March 31, 2024.  (Id.)  In exchange for Plaintiff's transportation of natural gas, the Contract required MSI to pay Great Lakes the maximum reservation rates and charges on a monthly basis, pursuant to the applicable rate schedule reflected in Plaintiff's gas tariff (the "Tariff") on file with the Federal Energy Regulatory Commission ("FERC").   (Id.)  In addition, MSI was obligated to pay all applicable surcharges.  (Id.) The Contract was secured by a letter of credit in the amount of $580,000.  (Countercl. at ¶ 37 [Doc. No. 80]; Letter of Credit, Ex. C to Countercl. [Doc. No. 80-3].)

In 2007, ESML acquired the membership interests of MSI and its assets and liabilities.  (First Am. Answer at ¶ 19 [Doc. No. 314].)  ESML is affiliated with several foreign entities, which are also Defendants in this action – Essar Steel Limited, formerly known as Essar Steel Holdings, Ltd.; Essar Steel India Limited, formerly known as Essar

Steel Limited; and Essar Global Fund Ltd., formerly known as Essar Global Limited ("Foreign Essar Defendants") (collectively with ESML, "Defendants").  In October 2009, Great Lakes filed this breach of contract action against the above named Defendants, alleging that ESML failed to make the first payment of $190,190 due on August 17, 2009, and has failed to make all subsequent payments. (First Am. Compl. at ¶¶ 20, 52 [Doc. No. 35].)[1]

### B.  Procedural Background

An award of future damages must be reduced to present value.  This is regularly done by calculating and then applying a discount rate to those damages.  A jury trial on the limited issue of the appropriate discount rate to apply to Great Lakes' future damages under the Contract[2] to bring them to present value was held from August 17, 2015 through August 19, 2015 in Duluth, Minnesota.  The trial consisted almost exclusively of the testimony of Great Lakes' expert, Dr. Lawrence Kolbe ("Kolbe").  Defendants cross-examined Kolbe and introduced some exhibits, but did not offer any witnesses of their own.[3]  The jury found the appropriate discount rate to be 4.30%.  (Special Verdict Form dated August 19, 2015 [Doc. No. 970].)  However, much of ESML's Motion centers around an issue decided immediately preceding trial.

---

[1] Great Lakes first filed suit in October of 2009, (see Compl. [Doc. No. 1]), but filed an amended complaint in February of 2010, (see First Am. Compl.).

[2] ESML was previously found liable for breach of the Contract as a matter of law.

[3] This is largely due to the fact that the Court previously struck Defendants' damages expert for failure to meet the admissibility standards of Daubert and Federal Rule of Evidence 702.  (See Order dated October 10, 2014 [Doc. No. 840].)

Just five days before trial, and one day before the scheduled pre-trial conference, Defendants, for the first time, asked that the Court decide as a matter of law whether the discount rate should be calculated on a pre-tax or post-tax basis. (Letter from Defendants to Court dated 8/12/2015 [Doc. No. 944].)[4] Defendants claimed this issue had only recently come to their attention during the deposition of Mr. George Chan ("Chan"), an individual involved with Great Lakes' tax preparations. (See Doc. No. 944 at 1.) According to Defendants, any discount rate must be calculated on a pre-tax basis to avoid an alleged "double recovery" by Great Lakes because the scheduled payments under the TSA already accounted for the taxes Great Lakes would pay on that revenue. (See id. at 1–2.) In response, Great Lakes agreed that the issue could be resolved as a matter of law. (Letter from Plaintiff to Court dated August 12, 2015 [Doc. No. 946].) However, Great Lakes argued that basic principles of economic finance required that a discount rate be calculated on a post-tax basis and there was absolutely no risk of a double recovery using this approach. (See Doc. No. 946 at 1.)

At the pre-trial conference the following day, the parties presented additional argument on the pre versus post-tax issue, but the Court elected to defer ruling on the matter until it had a chance to review the record more thoroughly and potentially receive more evidence and argument. (See Pretrial Hearing Tr. dated August 13, 2015 ("Pretrial Conf. Tr.") at 20:20–31:10, 32:14–33:19 [Doc. No. 954].) Subsequently, the parties each submitted additional letter briefing on the issue. (See Letter from Plaintiff to Court dated

---

[4] Given the enormous number of documents filed in this lengthy case, the Court will first cite documents with a full description, but thereafter will only cite their ECF docket document number, unless another identifier is assigned.

August 14, 2015 [Doc. No. 949]; Letter from Defendants to Court dated August 14, 2015 [Doc. No. 950]; Second Letter from Plaintiff to Court dated August 14, 2015 [Doc. No. 951].)  Ultimately, the Court ordered a preliminary hearing on the pre versus post-tax calculation of the discount rate to be held just before *voir dire*.  (See Order dated August 16, 2015 [Doc. No. 956].)  Great Lakes was ordered to produce Kolbe to testify on this issue and be cross-examined, and both parties were permitted to introduce previously disclosed exhibits, including the deposition testimony of Chan, to the extent Kolbe or counsel for either party relied on them.  (See Doc. No. 956 at 2–3.)  After the preliminary hearing was held (see Jury Trial Tr. (Vol. 1) dated August 17, 2015 at 4:5–85:1 [Doc. No. 967]), the Court ruled as a matter of law that the discount rate would be calculated on a post-tax basis, (see id. at 89:2–7).

Defendants now ask for a new trial.  (See Motion.)  Defendants allege that the Court committed or allowed numerous errors, many related to events that occurred during the preliminary hearing on the pre versus post-tax issue.  (See ESML's Memorandum of Law in Support of Motion for New Trial ("Memo.") [Doc. No. 982].)  Great Lakes filed a timely response, (Plaintiff's Memorandum in Opposition to ESML's Motion ("Resp.") [Doc. No. 1008]), to which Defendants replied, (ESML's Reply Memorandum of Law ("Reply") [Doc. No. 1013]).

## II.    DISCUSSION

### A.  Legal Standard for New Trial Motions

Federal Rule of Civil Procedure 59(a) allows the Court to grant a new trial on the motion of a party.  Whether or not to grant a new trial is almost entirely at the discretion of

5

the trial court.  Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980); Tedder v.

Am. Railcar Indus., Inc., 739 F.3d 1104, 1110 (8th Cir. 2014).   In exercising this

discretionary power, the function of the jury is not to be trivialized.  Christian v. Wagner,

611 F. Supp. 2d 958, 963 (S.D. Iowa 2009) aff'd, 623 F.3d 608 (8th Cir. 2010).  A jury's

verdict should be disturbed only "to prevent a miscarriage of justice."  Beckman v. Mayo

Found., 804 F.2d 435, 439 (8th Cir. 1986).  "Where the subject matter of the litigation is

simple;  where  there  exists  no  complicated  evidence  or  where  the  legal  principles

presented are such that they would not confuse the jury, the court should be reluctant to

grant  a  new  trial."   White v. Pence, 961 F.2d 776, 781 (8th Cir. 1992) (quotations

omitted).

        Relevant  to  the  present  matter,  a  motion  for  a  new  trial  may  be  premised  on  a

claim that the trial was not fair to the moving party "and may raise questions of law

arising  out  of  alleged  substantial  errors  in  admission  or  rejection  of  evidence  or

instructions to the jury."  Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008,

1017 (8th Cir. 2001) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251

(1940)).  However, the errors alleged must be prejudicial such that "in all probability

[they] produced some effect on the jury's verdict and [were] harmful to the substantial

rights of the party assigning [them]."  Warger v. Shauers, 721 F.3d 606, 609 (8th Cir.

2013) cert. granted, 134 S. Ct. 1491 (2014) and aff'd, 135 S. Ct. 521 (2014).  Only when

such prejudicial error(s) occurs is there a miscarriage of justice necessitating a new trial.

Trickey v. Kaman Indus. Technologies Corp., 705 F.3d 788, 807 (8th Cir. 2013).  A new

trial will not be had to simply re-litigate old issues.  Matter of Aaron Ferer & Sons Co.,

427 F. Supp. 350, 352 (D. Neb. 1977). The burden of showing prejudicial error sufficient to warrant a new trial is thus a heavy one. Hansen v. Barrett, 186 F. Supp. 527, 532 (D. Minn. 1960); Prestidge v. Minster Mach. Co., No. CIV. 4-81-833, 1986 WL 6634, at *1 (D. Minn. June 3, 1986).

Defendants contend that "[t]he jury's verdict in this case was the result of numerous evidentiary and legal errors that collectively steered the jury to adopt the discount rate advocated by [Great Lakes]." (Memo. at 1.)[5] Specifically, Defendants highlight five areas of alleged error: (1) rulings which limited their ability to cross-examine Kolbe; (2) allowing testimony from Kolbe and associated exhibits which were new or not earlier disclosed; (3) that the Court impermissibly "directed" what discount rate should apply, taking this fact-question from the jury; (4) that the Court issued incorrect jury instructions; and, (5) that the Court allowed Great Lakes' counsel to mischaracterize evidence in a prejudicial closing argument.[6] (Memo. at 1, 3–4.) The Court addresses each category of alleged error below.

### A. Defendants' Ability to Cross-Examine Plaintiff's Expert

---

[5] All citations to the Memo., Resp., and Reply reference the page numbers as listed in those documents, not the ECF page numbers.

[6] In a footnote, Defendants argue that the Court "may also" grant a new trial based on grounds they set forth in numerous pretrial motions (e.g., summary judgment, motions *in limine*, Daubert challenges, etc.). (Memo. at 3 n.1.) Defendants decline to elaborate on "the numerous pretrial errors relating to" these motions. (See id.) Federal Rule of Civil Procedure 59(d) allows a court to grant a new trial for any qualifying reason, whether raised by a party or not. However, the Court declines to do so here. This Court has discussed at great length its reasoning for the rulings on Defendants' previous motions. Defendants present no argument here why those previous rulings were in error, not to mention a miscarriage of justice warranting a new trial. See supra Part II.A.

Defendants argue that the Court "effectively foreclose[ed]" their opportunity to fully cross-examine Kolbe by improperly excluding evidence necessary to the task. (See Memo. at 12–16; Reply 14–16.) Specifically, Defendants object to the Court's exclusion of particular notes and loans, all of which purportedly support a higher discount rate and were allegedly relied on by Kolbe in forming his discount rate opinion. (See Memo. at 12–15.) Defendants also claim that the Court erroneously excluded the testimony of Joseph Seifert ("Seifert") and refused to admit two "relevant" loan agreements on the basis that they were not properly disclosed—despite the fact that the Court allowed some of Great Lakes' untimely disclosed exhibits. (Id. at 15–16.)

Under Federal Rules of Evidence 401 and 403, the Court must exclude evidence which is not relevant or is unfairly prejudicial, confusing, or misleading. See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 717 (8th Cir. 2001); see also Burke v. Ability Ins. Co., 291 F.R.D. 343, 348 (D.S.D. 2013) ("[T]he rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial."). "Even where the court has made evidentiary errors, a new trial is only warranted 'when the cumulative effect of the errors is to substantially influence the jury's verdict.'" Anchor Wall Sys. v. Rockwood Retaining Walls, Inc., 610 F. Supp. 2d 998, 1016 (D. Minn. 2009) (quoting Williams v. Kansas City, Mo., 223 F.3d 749, 755 (8th Cir. 2000)). When counsel simply forgets to enter exhibits into evidence, this is not the basis for granting a new trial unless the un-entered evidence would likely have produced a different verdict. See Dunne v. Libbra, 448 F.3d 1024, 1029 (8th Cir. 2006). Similarly, a party is not entitled to a new trial for limitations placed on its cross-

examination of an expert where those limitations were meant to prevent the cross-examination from being argumentative, misleading, or repetitive.   See UFE Inc. v. Methode Electronics, Inc., 808 F. Supp. 1407, 1418 (D. Minn. 1992); see also Sosna v. Binnington, 321 F.3d 742, 745 (8th Cir. 2003) (denying appeal for a new trial because limitation on party's ability to cross-examine the expert was not an abuse of discretion and there was a reasonable assurance the jury would have reached the same verdict even if the cross-examination were allowed); Int'l Travel Arrangers v. NWA, Inc., 991 F.2d 1389, 1400 (8th Cir. 1993) (upholding trial court's exclusion of exhibits and associated limitations on cross-examination of experts on the basis that such cross-examination would be prejudicial and irrelevant).

Defendants' arguments reveal a fundamental misunderstanding about the landscape of this suit when it finally went to trial.  Well in advance of trial, this Court issued two orders describing several parameters and factors the parties' experts should consider when formulating their opinions about the appropriate discount rate.  (See Order dated March 11, 2014 [Doc. No. 755]; Order dated April 4, 2014 [Doc. No. 760].) Nonetheless, Defendants' expert relied almost exclusively on so-called "bridge loans" in formulating her opinion.  (See Doc. No. 840 at 8, 16–17.)  The Court held that these loans were totally unreliable evidence for determining the discount rate applicable in this case. (Id. at 16–17.)  For this and other reasons articulated at length in this Court's opinion, the Court excluded Defendants' expert opinion because it was based on a deeply flawed methodology and, importantly, failed to address critically relevant data points, thus not meeting Daubert's admissibility standards.  (See id. at 13–21.)

To the extent Plaintiff's expert, Kolbe, initially addressed the bridge loans, notes, and other documents Defendants now assert were improperly excluded at trial, he did so only in responding to the flawed methodology of Defendants' expert.  (See id. at 10–11, 22–27 (describing Kolbe's opinion and denying Defendants' motion to exclude it on Daubert grounds).)  Kolbe made clear he did not consider bridge loans to be reliable data for calculating the discount rate in this case.  (See id. at 11.)  When Defendants' expert was excluded, these materials became irrelevant to Kolbe's methodologically sound calculation as to what he considered to be the appropriate discount rate.  The bridge loans and some of the other materials were also problematic since Defendants could easily use them to confuse or mislead the jury—by essentially attempting to present Defendants' expert's misleading opinion through the backdoor by cross-examining Kolbe on these documents.  As the Court explained at great length during the pretrial conference, this is not an acceptable cross-examination tactic.  (See Pretrial Conf. Tr. at 48:5–10, 49:14–50:12, 64:11–65:3, 65:23–66:5.)  See UFE, 808 F. Supp. at 1418 (denying a new trial based on limitations placed on party's ability to cross-examine expert where limitations meant to avoid misleading cross-examination).

Furthermore, as highlighted by Great Lakes, Defendants misstate the record as to what the Court did and did not admit as evidence at trial.  (See Resp. at 16–17.)  Two of the documents listed by Defendants as examples of exhibits the Court allegedly erroneously excluded were in fact never marked as exhibits or offered at trial.  (See Memo. at 13 (second and forth bullet points).)  Two other documents, (see Memo. at 13 (fifth and seventh bullet points)), the Court explicitly permitted Defendants to use, so

long as the references to bridge loans and project discount rates were redacted because of their misleading and prejudicial nature—however, Defendants ultimately elected not to offer the redacted exhibits.  (See Jury Trial Tr. (Vol. 2) dated August 18, 2015 at 241:15–242:11, 246:20–247:2 [Doc. No. 968].)  Some of the listed documents, (see Memo. at 13 (sixth and eighth bullet points)), were in fact admitted into evidence by Great Lakes. (See Jury Trial Tr. (Vol. 2) at 204:20–205:3, 208:4–13.)  Moreover, Defendants present no argument as to why any of the documents which were not admitted were likely to "have produced a different verdict."   See Dunne, 448 F.3d at 1029 (holding that un-entered exhibits were unlikely to have produced a different verdict and thus the district court did not err in denying a new trial on this basis); Int'l Travel Arrangers v. NWA, Inc., 991 F.2d at 1400 (same).

Lastly, Defendants' argument about the Court's refusal to allow the testimony and associated exhibits of Seifert is entirely without merit.  Seifert and the loans about which he would testify were not disclosed by Defendants until just weeks before trial.  (See Pretrial Conf. Tr. at 53:14–54:2, 67:4–19.)  Seifert's eleventh hour disclosure, in a case which has been litigated for over six years, is precisely the sort of surprise or ambush which the rules of discovery are meant to prevent.   See Fed. Reserve Bank of Minneapolis v. Carey-Canada, Inc., 123 F.R.D. 603, 606 (D. Minn. 1988) ("Trial by ambush is no longer an accepted method of practice.").  It defies logic to suggest that the Court's exclusion of Seifert under these circumstances constitutes a miscarriage of justice warranting a new trial.

## B.  Expert Testimony and Associated Exhibits Allowed

Defendants allege that the Court committed certain evidentiary errors related to the testimony of Kolbe and certain admitted exhibits, all of which prejudiced them.  (See Memo. at 8–12; Reply at 7–9.)   Specifically, Defendants claim the Court erred by allowing Kolbe to testify about the impact of FERC regulations on the pre versus post-tax calculation of the discount rate since this testimony was speculative, not previously disclosed, and Kolbe was never designated as an expert on FERC regulations.  (Memo. at 8–10.)  Furthermore, Defendants allege that the Court erred by allowing Kolbe to testify about new opinions and conclusions in his rebuttal expert report and by admitting several related exhibits.  (Memo. at 10–11.)  Finally, Defendants contend that the Court erred by allowing Kolbe to testify about issues outside the applicable discount rate and use exhibits which were not properly disclosed, (id. at 12), by declaring the effective date of the Contract to be November of 2006 despite a contradictory "admission" by Great Lakes in the pleading, (id. at 11), and by allowing deposition testimony from a witness, Chan, to be read into the record, (id.).

The erroneous admission of expert testimony warrants a new trial only if necessary to avoid a miscarriage of justice.  See Ray v. Wal-Mart Stores, Inc., 120 F.3d 882, 885 (8th Cir. 1997).  Even where an expert's testimony exceeds the scope of his opinion as disclosed under Federal Rule of Civil Procedure 26(a), or where that opinion was not properly disclosed under Rule 26(a), does not mean a miscarriage of justice has occurred.  See Kahle v. Leonard, 563 F.3d 736, 741 (8th Cir. 2009) (affirming trial court's admission of supplemental expert report disclosed twelve days before trial); Shuck v. CNH America, LLC, 498 F.3d 868, 873–74 (8th Cir. 2007) (upholding trial

court's admission of expert testimony which exceeded the scope of his disclosed opinion).  Without some indication of how the improperly disclosed opinion or exhibit prejudiced or surprised the party claiming error, admission of such evidence cannot serve as the basis for a new trial.  See Heimlicher v. Steele, 615 F. Supp. 2d 884, 930–31 (N.D. Iowa 2009) (denying motion for a new trial where moving party failed to identify a statement or opinion from the expert which surprised or prejudiced it).   Where evidentiary issues are briefed, argued, and carefully considered by a court, the party claiming these issues warrant a new trial bears the burden of showing the rulings made were erroneous.  See Aderans Co. v. Jablonski, 787 F. Supp. 882, 885 (D. Minn. 1992).

It strains reason to think Defendants were prejudiced or surprised by Kolbe's testimony regarding the pre versus post-tax calculation of the discount rate.  Defendants specifically identified FERC regulatory policy as the basis for their argument that the discount rate should be applied on a pre-tax basis.  (See Doc. Nos. 944, 950; Pretrial Conf. Tr. at 20:20–21:22, 29:12–30:3.)  Great Lakes made clear it would produce Kolbe to help resolve the pre versus post-tax issue and that his testimony on the subject would involve, to some extent, reference to FERC regulations.  (See Doc. No. 949.)  Literally on the eve of trial, Defendants cast open the door by asking the Court to decide the pre versus post-tax issue as a matter of law—they cannot in good faith claim surprise or prejudice in the record the Court developed to decide the matter.  (See Jury Trial Tr. (Vol. 1) at 10:24–12:6.)

Furthermore, Kolbe testified that the discount rate should be calculated on a post-tax basis according to basic principles of economics and math, subjects he was eminently

qualified to opine on, not simply FERC regulatory policy.  (Jury Trial Tr. (Vol. 1) at 25:7–26:19 (explaining why Defendants' suggestion there would be a double recovery if the discount rate was calculated on a post-tax basis was mathematically incorrect as a "matter of basic economics").)  Kolbe's limited knowledge of FERC regulatory policies was even elicited during direct examination, (see id. at 26:23–28:7), and Kolbe repeatedly qualified his opinion in light of this limited knowledge, (see, e.g., id. at 23:19– 24:2, 26:20–27:25).  Defendants also had ample opportunity to cross-examine Kolbe, including the ability to challenge his opinion on the basis of his limited knowledge about FERC regulatory policy.  (See id. at 42:5–66:8.)  Kolbe's testimony assisted the Court in making its ruling, but that ruling would not have changed in the absence of Kolbe's testimony.

Defendant's argument that allowing Kolbe to testify about the contents of his rebuttal expert report was prejudicial is also without merit.  Defendants do not point to any specific testimony from Kolbe which they claim is prejudicial.  Instead, they generally allege that his rebuttal report "proffered new methodologies and analysis" not contained in the original report.  (See Memo. at 10.)  This ignores the fact that neither Kolbe's initial report, nor his rebuttal report, were admitted into evidence precisely because the evolution of the case meant that the reports contained some irrelevant and prejudicial material.  (See Pretrial Conf. Tr. at 31:11–32:4.)  However, as the Court explained at the pretrial conference, Kolbe could testify about the contents of the rebuttal report which conformed with the Court's various evidentiary rulings.  (See id. at 31:23– 32:4.)  Kolbe's testimony at trial regarding the risks associated with a particular project

complied with this limitation and thus was not prejudicial.  (See Doc. No. 840 at 23–24; Pretrial Conf. Tr. at 31:11–32:4; Jury Trial Tr. (Vol. 2) at 199:12–201:14, 275:9–18, 276:1.)

Defendants' claim that the Court "improperly ignored binding Eighth Circuit precedent" by concluding that the effective date of the Contract was November 30, 2006 is disingenuous.  (See Memo. at 11.)  The case Defendants cite in support, Missouri Hous. Dev. Comm'n v. Brice, 919 F.2d 1306 (8th Cir. 1990), is clearly distinguishable.  There, the Eighth Circuit concluded that a district court did not err in deciding that a party's discovery responses, which conflicted with statements in its pleadings, did not create a fact issue sufficient to avoid summary judgment.  Brice, 919 F.2d at 1314–15.  Here, the issue is whether the Court's finding that the effective date of the Contract was November 30, 2006 was prejudicial error constituting a miscarriage of justice.  As the Court repeatedly noted, the parties **agreed** that November 30, 2006 was the effective date of the Contract.  (See Doc. No. 840 at 7 (citing (Ellison Aff., Ex. 11 at 3 [Doc. No. 778-3]).)  Any contention to the contrary is simply factually incorrect.  (See Pretrial Conf. Tr. at 32:11–13.)  There can be no claim of prejudicial error constituting a miscarriage of justice on this record.

Lastly, Defendants' assertions about the admissibility of Chan's testimony are also plainly inaccurate.  (See Memo. at 11–12.)  Chan was disclosed as a witness nearly a year before trial.  (See Great Lakes Witness List dated October 9, 2014 at 1 [Doc. No. 829].)  Furthermore, he was specifically identified as an individual who would offer testimony regarding Great Lakes' tax rates, how Great Lakes reports taxes to FERC, and FERC

policy on such reporting.  (See id.)  Moreover, the testimony offered from Chan pertained to publicly available information about the tax rate Great Lakes' parent companies pay and the rate reported to FERC—it was not expert testimony, nor was offered as such. (See Jury Trial Tr. (Vol. 2) at 303:5–307:6.)  Presumably, this testimony was offered to support Kolbe's opinion regarding the appropriate tax rate to use in calculating the discount rate, making it clearly relevant.  (See Jury Trial Tr. (Vol. 1) at 89:18–90:4 (directing that the parties could present credible evidence as to the appropriate tax amount).) Defendants even used Chan's testimony to argue that the tax amount was less than suggested by Plaintiff.  (See Jury Trial Tr. (Vol. 2) at 311:4–312:23.)  Defendants were not prejudiced by Chan's testimony, nor did it constitute a miscarriage of justice.

## C. Fact Issues Left to the Jury

Defendants contend that the Court impermissibly permitted or "directed" a "too low" discount rate, usurping the fact-finding role of the jury.  (Memo. at 4–6; Reply 4–5.) Specifically, Defendants allege that the Court "found that the discount rate to be applied to Plaintiff's damages must be higher than the risk-free rate but lower than the weighted average cost of capital ('WACC')."  (Memo. at 4.)  According to them, "[t]his was an improper invasion of the jury's role as the sole fact-finder and in and of itself warrants a new trial."[7]  (Id.)

---

[7] Defendants also allege that "the jury was required to utilize a tax adjusted rate even if that rate was *lower than the risk-free rate*."  (Memo. at 5.)  They claim this resulted in the jury finding a discount rate "below that permitted by law and, indeed, even below the parameters set by the Court."  (Id. at 6.)  However, Kolbe gave unrefuted testimony that a post-tax discount rate would not be less than the risk-free rate because the risk-free rate was not tax adjusted.  (See Jury Trial Tr. (Vol. 2) at 212:2–19.)  As the Court has already

Again, Defendants' argument borders on disingenuous.  First, Defendants quote a pretrial order where the Court, consistent with persuasive precedent, suggested parameters by which the parties' **experts** could formulate their opinions on the appropriate discount rate to comply with <u>Daubert</u>'s standards.  (<u>See</u> Doc. No. 755 at 56–64 (citing <u>In re Chemtura Corp.</u>, 448 B.R. 635, 673 (Bankr. S.D.N.Y. 2011); Doc. No. 760 at 4–5 (clarifying Doc. No. 755, again citing <u>Chemtura</u>).)  Contrary to Defendants' argument, the Court never gave such a limitation or instruction to the jury.[8]  (<u>See</u> Jury Trial Tr. (Vol. 3) dated August 19, 2015 at 371:21–378:20 [Doc. No. 969].)  The instruction given to the jury, as agreed to by the parties, was:

> It is the Court who will determine the final damages calculations in this case.  It is your duty as jurors to determine the appropriate discount rate.  Awards of future damages generally require adjustment, or discounting, to present value by the application of a discount rate.  As I explained to you earlier, the discount rate reflects that a dollar today is worth more than a dollar to be received in the future.  The discount rate performs two functions: It accounts for the time value of money; and it adjusts the value of the cash flow stream to account for risk.  The lower the discount rate, the higher the present value of the future payments.  The determination of the discount rate is an issue of fact for you to determine based on all of the evidence you have heard in this case.

---

explained to Defendants, comparing a non-tax adjusted risk-free rate with a tax adjusted discount rate is like comparing apples and oranges.  (<u>See</u> <u>id.</u> at 320:17–22.)  Defendants' argument to the contrary is factually incorrect and cannot serve as the basis for a new trial.

[8] In fact, the Court never even limited the parties' experts in the way Defendants suggest.  (<u>See</u> Doc. No. 760 at 5 ("In [Doc. No. 755], the Court did not prescribe the particular means by which the parties are to calculate an adjusted discount rate.  Neither did the Court mean to circumscribe the various calculations and factors to be considered by parties' experts. … [T]he parties' experts are free to employ whatever measure they find appropriate to reach a fair discount rate that considers risk from the perspective of what an investor would have paid to invest in the future stream of income from this Contract at the time it was made.")

(Jury Trial Tr. (Vol. 3) at 376:6–20.)  To suggest the Court somehow improperly limited or directed the jury's calculation of the appropriate discount rate is clearly not supported by the record.

Second, Defendants continue to confuse the role of the Court and the jury.  (See Doc. No. 892 at 7 n.2.)  "While the jury must determine the precise discount rate to apply, the Court has the authority to set the parameters of this inquiry in its efforts to ensure that an expert witness' testimony is the product of reliable principles and methods."  (Id. (citing Fed. R. Evid. 702(c)).)  Although the trial court must focus on the admissibility of an expert's methodology and principles, not his/her conclusions, the distinction between these considerations is not absolute:

> [C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data.  But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  Nothing in the Court's Orders violates this edict, nor did those Orders usurp the jury's fact finding role.  The jury was free to conclude the discount rate was whatever amount it thought the evidence supported.

Finally, the cases Defendants cite in support of their position are inapposite and appear to discredit their argument.  For example, in Monessen Sw. Ry. Co. v. Morgan, 486 U.S. 330 (1988), the Supreme Court made clear that while a trial court could not instruct the jury to apply a specific discount rate, it could provide the jury with any

number of methods for calculating the present value of damages.  See id. at 340–42.  As described above, the Court here did not improperly direct the jury to find any particular discount rate, or "subject the jury's estimate to . . . rigid mathematical limitation."  See id. at 342 (quotations omitted).  Similarly, in Tobin v. Liberty Mut. Ins. Co., No. CIV.A. 01-11979 DPW, 2007 WL 967860 (D. Mass. Mar. 29, 2007) aff'd and remanded, 553 F.3d 121 (1st Cir. 2009), the court refused to grant a new trial based on the allegation that the jury did not properly reduce the award to present value.  See id. at *10.  There, the defendant failed to object to the present value instruction given, did not request any specific formula or equation be given to the jury, and did not provide any probative evidence of an appropriate discount rate.  Id.  These facts are nearly identical to the present matter—Defendants did not request a specific alternative instruction regarding calculating the discount rate, agreed with the jury instruction that was given, and did not offer any probative evidence as to what the appropriate discount rate should be.  (See Jury Trial Tr. (Vol. 3) at 332:9–340:5.)

### D. Jury Instructions

Defendants allege that the Court erred by "suggesting in the jury instructions that the discount set forth by Dr. Kolbe was the only rate that could be applied to Plaintiff's damages."  (Memo. at 18.)  Specifically, Defendants object to this portion of the Court's instruction: "You heard testimony from an expert in this case, plaintiff's expert, Dr. Kolbe, regarding the discount rate that applies to plaintiff's future damages."  (Jury Trial

Tr. (Vol. 3) at 375:14–16; see Memo. at 18.[9])  Furthermore, Defendants contend the Court erred when it failed to explain to the jury the specific risks accounted for by a discount rate.  (Memo. at 18.)

An improperly instructed jury may serve as the basis for a new trial.  See, e.g., Vaidyanathan v. Seagate US LLC, 691 F.3d 972, 978 (8th Cir. 2012); McKay v. WilTel Commc'n Sys., Inc., 87 F.3d 970, 976 (8th Cir. 1996).  However, a new trial based on erroneous jury instructions "is necessary only when the errors misled the jury or had a probable effect on the jury's verdict."  Slidell, Inc. v. Millennium Inorganic Chemicals, Inc., 460 F.3d 1047, 1054 (8th Cir. 2006).  Only an encroachment upon the substantial rights of a party by the jury instructions given warrants a new trial.  Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 401 F.3d 901, 916 (8th Cir. 2005).  "[J]ury instructions do not need to be technically perfect or even a model of clarity," but rather when "taken as a whole and viewed in the light of the evidence and applicable law, [they must] fairly and adequately submit[] the issues in the case to the jury."  Gill v. Maciejewski, 546 F.3d 557, 563 (8th Cir. 2008) (quotations omitted).

Furthermore, Federal Rule of Civil Procedure 51(c)(1) requires that a party object to a jury instruction on the record, "stating distinctly the matter objected to and the grounds for the objection."  See Dupre v. Fru-Con Eng'g Inc., 112 F.3d 329, 334 (8th Cir. 1997); see also Pulla v. Amoco Oil Co., 72 F.3d 648, 656 n.13 (8th Cir. 1995) (Rule 51 is designed to afford the trial court the chance to fix a defective instruction and prevent litigants from covertly relying on an erroneous instruction as the basis for a new trial).

---

[9] Defendants misquote this portion of the instructions in their briefing.

Similarly, a party must properly request an instruction and have that request denied to later object that the instruction was not given.  See Fed. R. Civ. P. 51(d)(1)(b).  Where a party fails to object or request in this manner, a court may review the instructions for plain error "if the error affects substantial rights."  Fed. R. Civ. P. 51(d)(2).

Defendants' objection to the Court's jury instructions cannot serve as the basis for a new trial for two reasons.  First, Defendants fail to show that the instruction about expert testimony was prejudicial.  The Court did not direct the jury to follow Kolbe's opinion about the appropriate discount rate, but rather correctly noted that they could consider his testimony about the appropriate discount rate.  Moreover, the Court's instructions immediately following this statement made clear the jury could disregard Kolbe's testimony entirely, or afford it whatever weight the jury thought appropriate.[10] (See Jury Trial Tr. (Vol. 3) at 375:17–376:5.)  The Court also instructed the jury, "Nothing I have said or done was meant to suggest what I think your verdict should be. The verdict is entirely up to you."  (Id. at 378:7–9.)  Taken individually, but especially when considered in the context of the jury instructions as a whole, the Court's standard instructions regarding expert testimony could not "mislead the jury or [have] a probable effect on its verdict."   See  Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 434 F.3d 1081, 1093 (8th Cir. 2006).

---

[10] Defendants claim that because only Kolbe testified, a specific instruction that the jury could find a discount rate other than the rate he advocated was necessary.  (See Reply at 18.)  Defendants' failure to proffer an expert that complied with the Court's orders and the admissibility standard of Daubert and Federal Rule of Evidence 702 meant that only Kolbe testified at trial.  (See Doc. No. 840.)  Moreover, Defendants never requested the specific instruction they now claim should have been given.  Defendants' mistakes and oversights are not grounds for a new trial.

21

Second, Defendants never objected to the jury instructions before they were read (see Jury Trial Tr. (Vol. 3) at 325:24–340:6), nor did they object during the reading, (see id. at 371:21–378:20).   Defendants also never requested a jury instruction describing the "specific factors" to consider when determining the discount rate or offering other guidance for the calculation.[11]   (See id. at 325:24–340:6.)   Without an objection or a denied request, jury instructions are reviewed only for plain error.   The Court finds no error, let alone plain error.   Rather, the instructions given, taken as a whole, "fairly and adequately submitted the issue[] in the case to the jury."   Gill, 546 F.3d at 563.

### E.  Plaintiff's Closing Argument

Lastly, Defendants allege that the Court erred by allowing Great Lakes' counsel to present "an improper and prejudicial closing argument."   (Memo. at 16–17; Reply 16–17.)   Specifically, Defendants claim that Great Lakes' statements that it received no payments under the TSA, (see Jury Trial Tr. (Vol. 3) at 369:23–370:7, 371:15–17), were incorrect because Great Lakes "was paid $580,000 under the letter of credit . . . ." (Memo. at 17).   According to Defendants, Plaintiff's incorrect statements prejudiced them "by playing on the jury's emotions instead of discussing the evidence at hand." (Id.)

"When a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are plainly unwarranted and clearly injurious and cause prejudice to the opposing party and unfairly influence a jury's verdict."   Lawrey v.

---

[11]  It is worth noting that Defendants' counsel, in his closing argument, extensively discussed the risks the jury should consider when calculating the discount rate in this case.  (See id. at 360:6–362:23.)

Good Samaritan Hosp., 751 F.3d 947, 954 (8th Cir. 2014) (quotations omitted).   To warrant a new trial, the statements of counsel must be "highly prejudicial and a blatant appeal to jury bias."   Bukowski v. George A. Hormel & Co., 157 F.R.D. 50, 54 (S.D. Iowa 1994) (quoting Rojas v. Richardson, 703 F.2d 186, 193 (5th Cir.1983)).   The party alleging error "must make a concrete showing" of prejudice stemming from the improper statement(s).   Burroughs v. Mackie Moving Sys. Corp., 690 F.3d 1047, 1051 (8th Cir. 2012).   The Eighth Circuit "has repeatedly minimized the degree of prejudice arising from statements that merely highlight what the jury already knows."   Id.   Furthermore, a party must object to prejudicial arguments of opposing counsel at trial to preserve the objection for appeal.[12]   Billingsley v. City of Omaha, 277 F.3d 990, 997 (8th Cir. 2002); see also Wichmann v. United Disposal, Inc., 553 F.2d 1104, 1106 (8th Cir. 1977) ("Counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial."   (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 238–39 (1940)).

Defendants' claim of prejudice stemming from Great Lakes' statements about the lack of payments under the TSA is without merit.   First, Defendants' assertion that Plaintiff's statements were incorrect is based on a tortured mischaracterization of the TSA, Great Lakes' FERC tariff rate, the letter of credit, and the rulings in this case.   (See

---

[12] Only in extraordinary cases, to prevent a miscarriage of justice, will a court reverse based on errors not objected to at trial.   Lange v. Schultz, 627 F.2d 122, 127 (8th Cir. 1980).

Reply at 16–17.)  This Court has repeatedly held that the funds received by Great Lakes pursuant to the letter of credit were **not** payments under the TSA/Contract.  (See, e.g., Amended Order Dated September 16, 2015 at 2–4 [Doc. No. 977]; Order dated May 15, 2012 at 25–26 [Doc. No. 397].)  Thus, Plaintiff's statements during closing arguments were factually and legally correct.  Even the case introduction read to the jury correctly stated that ESML made no payments on the TSA.[13]   (See Jury Trial Tr. at 104:3–4). Regardless, Defendants have not made the required concrete showing of prejudice, or that Great Lakes' statements were "plainly unwarranted and clearly injurious."  See Lawrey, 751 F.3d at 954.

Second, Defendants never objected to Great Lakes' closing argument.  (See Jury Trial Tr. (Vol. 3) at 365:15–371:19.)  Without such an objection, it is unlikely Defendants could even base an appeal on Great Lakes' allegedly improper closing argument.  See Billingsley, 277 F.3d at 997.  This Court will not grant a new trial on an objection raised only after the verdict was rendered.  See Wichmann, 553 F.2d at 1106.

## III.   CONCLUSION

Defendants have not met their heavy burden to show a new trial is warranted. They present no compelling evidence or argument that any errors occurred, let alone that any errors were prejudicial and represented a miscarriage of justice.

---

[13]  Defendants did not object to this portion of the preliminary jury instructions.  (See Pretrial Conf. Tr. at 85:4–86:25.)  In fact, the Joint Proposed Introduction to the Case, which Defendants authored, stated that "ESML has not made any payments under the contract."  (Doc. No. 921 at 5.)

### IV.     ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant ESML's Motion for New Trial [Doc. No. 980] is **DENIED**.


Dated:  January 5, 2016                              s/ Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge