# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Great Lakes Gas Transmission Limited Partnership, <br><br> Plaintiff, <br><br> v. <br><br> Essar Steel Minnesota, LLC; Essar Steel Limited f/k/a Essar Steel Holdings, Ltd.; Essar Steel India Limited f/k/a Essar Steel Limited; and Essar Global Fund Ltd. f/k/a Essar Global Limited, <br><br> Defendants. | Case No. 09-cv-3037 (SRN/LIB) <br><br><br><br> **MEMORANDUM OPINION AND ORDER** |

Brian A. Farlow, Hayley Ellison, Worthy W. Walker, Barbara L. Wohlrabe, and David W. Elrod, Elrod PLLC, 500 North Akard Street, Suite 3000, Dallas, TX 75201; David T. Schultz and Julian C. Zebot, Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, for Plaintiff.

Douglas H. Flaum, Kevin P. Broughel, and Shahzeb Lari, Paul Hasting LLP, 75 East 55th Street, New York, NY 10022; Lousene M. Hoppe and Nicole M. Moen, Fredrikson & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402-1425; Thomas R. Thibodeau and David M. Johnson, Thibodeau Johnson & Feriancek, PLLP, 302 W. Superior Street, Suite 800, 800 Lonsdale Building, Duluth, MN 55802, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Great Lakes Gas Transmission Limited Partnership's ("Plaintiff" or "Great Lakes") Motion for Attorney's fees ("Motion") [Doc. No. 1001]. For the reasons set forth below, the Motion is denied.

## I.     INTRODUCTION

For over six years, the parties to this action have engaged in vigorous litigation over what could have been, and likely should have been, a relatively straightforward contract dispute.  In this process, they have unnecessarily expended millions of dollars in attorney's fees.  Plaintiffs now allege that Defendants and their counsel have at various times engaged in sanctionable conduct—conduct which now serves as the basis for Plaintiff's Motion.

Many of Plaintiff's complaints about Defendants' conduct throughout the course of this litigation are well-taken.  However, the standard for imposing sanctions is very high.  Even viewed as a whole, Defendants' conduct does not warrant the imposition of sanctions.

## II.     BACKGROUND

### A. Factual History

The factual history of this case is extensively recounted in the prior opinions and orders of this Court.  It is briefly summarized here.

In short, this case arises from a contract ("Contract") dated September 6, 2006, between Great Lakes and Minnesota Steel Industries ("MSI"), which became effective on November 30, 2006.  (Ellison Aff., Ex. 2 "Contract" [Doc. No. 681-2].)  The Contract required Great Lakes to transport up to 55,000 dekatherms of natural gas per day on MSI's behalf.  (Id.)  The Contract, otherwise known as the Transportation Services Agreement ("TSA"), was to govern the parties' relationship from July 1, 2009 through March 31, 2024.  (Id.)  In exchange for Plaintiff's transportation of natural gas, the Contract required MSI to pay Great Lakes the maximum reservation rates and charges on a monthly basis, pursuant to the applicable rate schedule reflected in Plaintiff's gas tariff (the "Tariff") on file with the

Federal Energy Regulatory Commission ("FERC").   (<u>Id.</u>)  In addition, MSI was obligated to pay all applicable surcharges.  (<u>Id.</u>)  The Contract was secured by a letter of credit in the amount of $580,000.   (Countercl. at ¶ 37 [Doc. No. 80]; Letter of Credit, Ex. C to Countercl. [Doc. No. 80-3].)  Important to the present matter, the Contract contains no fee-shifting provision or any agreement as to the allocation of attorney's fees in the event of a dispute.

In 2007, Defendant Essar Steel Minnesota, LLC ("ESML") acquired the membership interests of MSI and its assets and liabilities.  (First Am. Answer at ¶ 19 [Doc. No. 314].)  ESML is affiliated with several foreign entities, which are also Defendants in this action—Essar Steel Limited, formerly known as Essar Steel Holdings, Ltd.; Essar Steel India Limited, formerly known as Essar Steel Limited; and Essar Global Fund Ltd., formerly known as Essar Global Limited ("Foreign Essar Defendants") (collectively with ESML, "Defendants").  In October 2009, Great Lakes filed this breach of contract action against the above named Defendants, alleging that ESML failed to make the first payment of $190,190 due on August 17, 2009, and has failed to make all subsequent payments. (First Am. Compl. at ¶¶ 20, 52 [Doc. No. 35].)  Great Lakes also brought related claims against the Foreign Essar Defendants based on theories of piercing the corporate veil/alter ego, joint enterprise/joint venture, and agency liability.  (First Am. Compl. at ¶¶ 55–63.)

The Court found as a matter of law that ESML breached the Contract.  (<u>See, e.g.</u>, Order dated March 19, 2013 at 38–44 [Doc. No. 559].)  The Foreign Essar Defendants then offered to settle the claims against them by way of judgment pursuant to Federal Rule of Civil Procedure 68.  (Offer of Judgment dated July 3, 2013 ("Offer of Judgment") [Doc. No.

639].)  They also agreed to pay any damages awarded against ESML on Great Lakes' breach of contract claim.  (Id.)  Great Lakes accepted the Offer of Judgment the same day it was offered.  (Notice of Acceptance of Rule 68 Offer of Judgment dated July 3, 2013 [Doc. No. 640].)

The only issue then remaining was the amount of Great Lakes' damages and the discount rate to be applied to those damages to reduce them to present value.  A jury trial on the limited issue of the appropriate discount rate to apply to Great Lakes' future damages under the Contract was held from August 17, 2015 through August 19, 2015 in Duluth, Minnesota.  The trial consisted almost exclusively of the testimony of Great Lakes' expert, Dr. Lawrence Kolbe ("Kolbe").  Defendants cross-examined Kolbe and introduced some exhibits, but did not offer any witnesses of their own.[1]  The jury found the appropriate discount rate to be 4.30%.  (Special Verdict Form dated August 19, 2015 [Doc. No. 970].)  Pursuant to this finding by the jury, the additional calculations of the parties, and the offer of judgment, a judgment in the amount of $32,902,183 was entered against ESML and the Foreign Essar Defendants. (See Amended Judgment dated 01/06/2016 [Doc No. 1020].)

This abbreviated history does not capture the voluminous motion practice, ancillary proceedings, and other events which greatly prolonged the litigation.[2]  Providing a coherent summary of these proceedings would be difficult at best and is not necessary to resolve the

---

[1]  This is largely because the Court previously struck the proffered testimony of Defendants' damages expert for failure to meet the admissibility standards of Daubert and Federal Rule of Evidence 702.  (See Order dated October 10, 2014 [Doc. No. 840].)

[2] By way of example, the docket for this case is now well over 1,000 entries long.

Motion before the Court.  Instead, the Court will specifically address the conduct and incidents which Plaintiff highlights in support of its Motion.  The Court has considered Defendants' conduct throughout the litigation in deciding Plaintiff's Motion.

### B.  Plaintiff's Motion for Attorney's Fees

The Contract contains no fee-shifting provision or other agreement that attorney's fees be awarded to a prevailing party.  Instead, Plaintiff seeks an award of attorney's fees as a sanction based on Defendants' conduct throughout the course of this litigation.  In general, Plaintiff alleges that Defendants have "engaged in a defensive strategy to cause delay and needlessly drive up the cost of litigation at every turn" employing bad faith, vexatious, and dilatory tactics along the way.   (Plaintiff's Memorandum in Support of Motion for Attorney's Fees ("Pl.'s Mem.") at 1–2 [Doc. No. 1002].)  Plaintiff asks for 35% of its total attorney's fees[3], or just over $1.7 million, to "vindicate the Court's authority and compensate Great Lakes" for this pattern of behavior.  (Pl.'s Mem. at 11.)  As support, Plaintiff highlights four instances of Defendants' sanctionable conduct: (1) filing motions with no factual or legal support, (id. at 2); (2) repeatedly asserting that Defendants did not breach the Contract and presenting legal arguments to support that assertion, even after the Court definitively ruled Defendants had breached the Contract, (id. at 3–4); (3) creating unreasonable discovery delays and driving up costs in the process, (id. at 4–5); and (4) Defendants' conduct (more specifically, the conduct of their counsel) in support of its expert witness and challenging that expert's exclusion by the Court, (id. at 5).

---

[3] Plaintiff claims its total attorney's fees are over $5.1 million.  (See Pl.'s Mem. at 11.)

In addition, Plaintiff asks for another $853,000 in attorney's fees "for three particularly egregious instances of misconduct."   (See id. at 11–13.)   These are: (1) Defendants' "baseless and unsupported" third-party claims against Great Lakes' parent entities resulting in voluminous discovery, (id. at 3, 11–12); (2) the fact that Defendants "attempted to undermine this Court's jurisdiction by filing a complaint with FERC" asserting the same issues as were the pending before the Court (id. at 12); and (3) Defendants' challenge to the Court's subject matter jurisdiction shortly before trial and in violation of a stipulation between the parties, (id. at 12–13).   Based on these instances and Defendants' overall allegedly dilatory and vexatious conduct, Plaintiff requests a total sanction award of over $2.6 million in attorney's fees.

## III.   DISCUSSION

Plaintiff's recounting of Defendants' objectionable conduct is largely accurate.   As previously described, the Court does not agree with, nor condone, this conduct.   However, an award of sanctions for millions of dollars in attorney's fees, requires especially egregious and vexatious behavior.   Even looking at the totality of Defendants' conduct over the last several years, this Court cannot conclude that sanctions are presently appropriate.

### A.  Legal Standard for Sanctions

Courts possess the inherent authority to impose sanctions for bad faith conduct during litigation.[4]   Chambers, 501 U.S. at 46.   Sanctions on this basis serve "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions

---

[4] Plaintiff primarily argues for sanctions pursuant to the Court's inherent authority, (see Pl.'s Mem. at 2, 8–10), although it does also reference the statutory authority to sanction attorneys under 28 U.S.C. § 1927, (see Pl.'s Mem. at 9 n.1).

available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." Id. (quotations omitted).  Bad faith, or willful disobedience of a court order, is a requirement for sanctions.  Id.  A party shows bad faith when it intends to delay or disrupts litigation.  Id.  Conduct done "vexatiously, wantonly, or for oppressive reasons," warrants sanctions.  Id. at 45–46.  Sanctions are considered based on the record as a whole, rather than merely considering the latest instance of misconduct.  Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976).

However, "[t]he imposition of sanctions is a serious matter and should be approached with circumspection."  O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir. 1987).  Courts should exercise their inherent sanctioning authority "with restraint and discretion."  Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 802 (8th Cir. 2005) (quoting Harlan v. Lewis, 982 F.2d 1255, 1262 (8th Cir. 1993)).  Even where bad faith is present, sanctions are appropriate "only in the most egregious of cases."  Doe v. Univ. of the Pac., No. CIV. S-09-764, 2010 WL 5129530, at *1 (E.D. Cal. Dec. 8, 2010); Fag Bearings Corp. v. Gulf States Paper Co., No. 95-5081-CV-SW-8, 1998 WL 919115, at *46 (W.D. Mo. Sept. 30, 1998).  An imposition of sanctions should address "conduct that constitutes willful abuse of judicial process or fraud upon the court."  Steinlage v. Mayo Clinic Rochester, 235 F.R.D. 668, 674 (D. Minn. 2006).

## B. Defendants' Conduct

Plaintiff alleges that Defendants regularly "asserted claims and defenses with no factual or legal support."  (Pl.'s Mem. at 2.)  As examples, Plaintiff highlights a motion

for sanctions Defendants brought against it at the outset of the litigation, (Doc. No. 55[5]), and an estoppel defense Defendants premised on the argument that ESML's repudiation of the Contract was merely "purported," (Doc. No. 730 at 2–3). (Pl.'s Mem. at 2–4.) Plaintiff also notes several instances where Defendants mischaracterized the record, or misstated controlling legal authority. (Pl.'s Mem. at 5–6.)

It is true that Defendants' opening motion for sanctions against Plaintiff was found to be "wholly without merit . . . ." (Doc. No. 76 at 39.) However, Plaintiff too has made several requests for sanctions and costs which were either withdrawn or unsuccessful. (See, e.g., Doc. Nos. 519; 632; 755.) Defendants' attempt at the same, even if based on questionable grounds and ultimately unsuccessful, does not evidence the bad faith or egregious conduct that warrants sanctions. See Mayhall v. Berman & Rabin, P.A., 13 F. Supp. 3d 978, 983 (E.D. Mo. 2014) (party's failure to prevail on a theory, claim, or motion is not necessarily evidence of bad faith or vexatious conduct).

Plaintiff's objections to Defendants' repeated mischaracterizations of the record and case law are largely well-founded. For instance, the Court explicitly found that ESML breached the Contract as a matter of law. (Doc. No. 559 at 38–43.) Despite this finding, Defendants continued to assert defenses and arguments premised on the contention that ESML had not breached the Contract. (See Doc. No. 730 at 2–3 (describing ESML's "purported" breach of the Contract).) Remarkably, Defendants describe Plaintiff's mischaracterization claim as arguing that Defendants "should have

---

[5] Given the enormous number of documents filed in this case, the Court will cite documents simply by their ECF document number, unless otherwise specified.

simply admitted liability without defending against Plaintiff's claims." (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees ("Defs.' Resp.") at 13 [Doc. No. 1012].) This is plainly not Plaintiff's contention. Plaintiff argues it was vexatious and dilatory for Defendants to continue advancing defenses and arguments premised on a theory the Court had definitively ruled against.

Unfortunately, there are also a number of examples of Defendants' mischaracterizations of the record and refusal to accept the rulings and findings of this Court. One example of Defendants' refusal to accept this Court's ruling is found in Defendants' briefing for this Motion. The Court excluded Defendants' damages expert before trial for a variety of evidentiary reasons. (See Doc. No. 840 at 13–22.) One reason was that the expert stated that she was not provided certain key documents by Defendants' counsel and therefore did not review them, a review she agreed would have been important to her in formulating her opinion. (Id. at 15–20.) Defendants engaged in numerous after-the-fact efforts to rebut this finding, all of which were unpersuasive at best. (See Doc. No. 892 (denying Defendants' motion to reconsider exclusion of their expert witness).) Despite the clear ruling of the Court to the contrary, Defendants persist to this day in arguing that the expert's failure to review critical documents was "purported." (Defs.' Resp. at 14.)

An appeal is the proper means to challenge and dispute this Court's rulings. However, Defendants elected to try and advance their position by refusing to acknowledge these rulings throughout the litigation. Still, even considered in its entirety,

this Court cannot at this time conclude such behavior rose to the egregious level warranting sanctions.

### C. Defendants' Third-Party Claims Against Plaintiff's Parent Companies

Plaintiff argues that Defendants' filing of third-party claims against its various parent companies ("TransCanada") was meant to harass, delay, and run up the costs of litigation.  (See Pl.'s Mem. at 3, 11–12.)  Plaintiff alleges that the availability of public information about three TransCanada entities which discredited Defendants' third-party claims evidences a vexatious intent behind Defendants' claims.  (See id.)  Plaintiff also sees the fact that Defendants ultimately withdrew these claims, but only after conducting considerable discovery, as proof of bad faith intent behind asserting them in the first place.  (See id. at 12.)

Proceeding with a complaint or claim, even if of questionable merit, does not necessarily evidence bad faith.  See Jahnke v. R.J. Ryan Const., Inc., No. 13-cv-962 (JRT/SER), 2014 WL 4639831, at *11 (D. Minn. Sept. 16, 2014).  This Court has previously summarized the competing considerations when deciding whether sanctions are appropriate for pursuing non-meritorious claims:

> While the court laments counsel's pursuit of the nonmeritorious claims discussed above, sanctions are not called for in this case.  There is no evidence that counsel engaged in dilatory or vexatious tactics, nor has counsel disobeyed any court orders.  The court recognizes the fine line counsel must navigate between her duty to her client and her duty to the court.  Although plaintiff's claims are without merit, the conduct at issue here is less egregious than that sanctioned by the court in other cases.  The court regrets the costs incurred by defendant in having to bring its motion for summary judgment; however, as recognized by other courts, such costs are common to all litigants forced to defend a lawsuit.

Barnes v. Benham Grp., Inc., 22 F. Supp. 2d 1013, 1024 (D. Minn. 1998).

Here, like in Barnes, the Court cannot conclude that Defendants' third-party claims were purely a vexatious tactic evidencing the bad faith and egregious conduct that warrants sanctions.  Although the time and resources Plaintiff expended in addressing these claims may be unfortunate, this behavior does not warrant sanctions.

### D.  Defendants' FERC Filing

Plaintiff contends that Defendants "attempted an end-run around this Court's jurisdiction" by filing a contemporaneous complaint with FERC based on the same facts. (Pl.'s Mem. at 6–7, 12.)  Plaintiff further argues that Defendants' FERC claim warrants sanctions because it was meritless and ultimately dismissed by FERC.  (See id.)

A party's conduct outside the confines of a specific court proceeding may still serve as the basis for sanctions.  Chambers, 501 U.S. at 57.  In Chambers, the Supreme Court upheld an award of sanctions based in part on a party seeking permission from the Federal Communications Commission to build new transmission towers.  Id. at 39, 57. The party sought this permission in direct disobedience of the district court's order and the judgment entered in the case.  Id.

Here, the Court never directed that Defendants not file a claim with FERC.  While Defendants' attempt to take this matter to FERC may have been ill-advised, the Court cannot conclude it was done in bad faith.

### E.  Defendants' Challenge to Subject Matter Jurisdiction

Plaintiff alleges that Defendants' challenge to the Court's subject matter jurisdiction on the eve of trial was done in bad faith and constituted an attempt to further

delay resolution of Plaintiff's claims.   (Pl.'s Mem. at 7–8, 12.)   Plaintiff questions Defendants' contention that they first became aware of the jurisdictional issue at that time.  (Id. at 7–8.)  Plaintiff further notes that Defendants' challenge to jurisdiction was in violation of a stipulation between the parties.  (Id. at 7–8, 12.)

In a stipulation filed with the Court, Defendants agreed not to challenge this Court's subject matter jurisdiction.   (See Doc. No. 392 at ¶ 1.)   But, as the Court previously noted, stipulations cannot establish subject matter jurisdiction.  (See Doc. No. 879 at 53, n.7.)  DuBose v. Int'l House of Pancakes of Mobile, Alabama, Inc., 989 F.2d 504 (8th Cir. 1993) ("The parties, however, may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court.").  The timing of Defendants' challenge, on the eve of trial and shortly after the Court indicated it was inclined to strike Defendants' expert witness, also suggests a motive to cause delay.[6]  However, a party may challenge the subject matter jurisdiction of a court at any time.  Kontrick v. Ryan, 540 U.S. 443,

---

[6] Defendants repeatedly claim they raised their diversity jurisdiction challenge as soon as they became aware of the issue.  (See Defs.' Resp. at 7–8, 10 n.5; Doc. No. 811 at 3.) This contention is belied by the fact that Great Lakes' parent company's public ownership—which served as the basis for Defendants' diversity jurisdiction challenge— was disclosed and extensively discussed by the parties years beforehand.  (See Doc. No 35 at ¶ 4; Doc. No. 356 at 12; Doc. No. 369 at 4 n.2; Doc. No. 373 at 12–13.)  That this disclosure and discussion occurred with Defendants' prior counsel makes no difference; a new attorney is expected to diligently and expediently come up to speed when retained in a case.  See Zheng Liu v. Chertoff, 538 F. Supp. 2d 1116, 1125 (D. Minn. 2008).  Here, Defendants' present counsel was counsel of record for well over a year before raising the diversity jurisdiction challenge.

455 (2004).   Although the Court does not condone the way Defendants raised their diversity jurisdiction challenge, it is not grounds for sanctions.[7]

## IV.     CONCLUSION

Defendants' conduct, even when taken in the full context of this case, does not evidence the bad faith and egregious behavior which sanctions are meant to address.   The standard for sanctions is appropriately high and has not been met here.

## V.      ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Great Lakes' Motion for Attorney's Fees [Doc. No. 1001] is **DENIED WITHOUT PREJUDICE**.


Dated:  January 19, 2016                          s/ Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge

---

[7] Defendants imply that it was actually Plaintiff who "initiated" the disputed subject matter jurisdiction challenge.   (Defs.' Resp. at 7–8.)   Defendants plainly initiated the subject matter jurisdiction challenge by raising the issue with Plaintiff and declaring their intent to bring the matter before the Court.   (See Doc. No. 811 at 3; Doc. No. 814 at 3–4; Doc. No. 855 at 7:8–8:9.)